THE STATE OF KANSAS v. BILLY HUGHES.

No. 390.

1. INTOXICATING LIQUORS—*Erroneous Instruction.* In a prosecution for an illegal sale of intoxicating liquor, it is error for the court to instruct the jury that evidence of other unlawful sales may be considered, without restriction, to determine whether the defendant is guilty of making the sale on which the state elects to rely for a conviction. (*The State v. Marshall,* 2 Kan. App. 792.)

2. ——— *Nuisance — Sufficient Evidence.* The evidence in this case examined, and *held* to be sufficient to sustain the conviction of defendant on a charge of keeping and maintaining a common nuisance, by being the keeper of a place where intoxicating liquors are illegally sold and kept for illegal sale, and where persons are permitted to resort for the purpose of drinking intoxicating liquor as a beverage.

MEMORANDUM.—Appeal from Brown district court; R. M. EMERY, judge. Prosecution for violations of the prohibitory law. The defendant, Billy Hughes, was convicted. He appeals. Modified. The opinion herein, filed June 5, 1896, states the material facts.

*Jas. Falloon, S. F. Newlon,* and *W. P. Bland,* for appellant.

*F. B. Dawes,* attorney general, and *D. E. Reber,* assistant attorney general for Brown county, for The State.

The opinion of the court was delivered by

CLARK, J.: This is a prosecution for alleged violations of the prohibitory liquor law of this state. The information contained 11 counts, in the first 10 of which the defendant was charged with the illegal sale of intoxicating liquors, while in the eleventh count he was charged with keeping and maintaining a place where intoxicating liquors were illegally sold and kept for illegal sale, and where persons were permit-

ted to resort for the purpose of drinking intoxicating liquors as a beverage. After the state had introduced its evidence and rested, upon the demand of the defendant, the assistant attorney general, who was prosecuting on behalf of the state, announced the particular sales upon which the state would rely for a conviction. Subsequently the court instructed the jury :

"In determining the guilt or innocence of the defendant on the first 10 counts, you have the right to consider all the evidence introduced in the case, and all unlawful sales made by him or any one authorized by him, including those given in evidence on which the state has not relied for conviction; and from such evidence determine whether or not the defendant is guilty of making the sales on which the state has elected to rely ; but you cannot convict the defendant on sales other than those on which the state has elected to rely."

The defendant duly excepted to the ruling of the court on his objection to the instruction so given, and the jury rendered a verdict of guilty on the first and eleventh counts, upon each of which the defendant was adjudged to pay a fine of $200, and be committed to the county jail for a period of 60 days. Under the ruling of this court in *The State v. Marshall*, 2 Kan. App. 792 ( 44 Pac. Rep. 49), the court committed prejudicial error in giving the instruction above quoted, and for this reason it will be unnecessary to consider some of the questions raised by the appellant in support of his contention that a new trial should have been awarded on the first count of the information.

The evidence is clear and uncontradicted that the building described in the information was a place where intoxicating liquors were unlawfully sold and kept for unlawful sale, and where persons were permitted to resort for the purpose of drinking intoxica-

ting liquors as a beverage. Under paragraph 2533, General Statutes of 1889, the keeper of such place was guilty of maintaining a common nuisance, and, upon conviction, would be subject to the punishment prescribed by that section of the statute. This proposition is not controverted by the defendant, but he strenuously insists that there is not only an utter want of evidence to support the verdict of the jury that he was the keeper of such place, but that the evidence affirmatively shows that some other than himself had the entire charge of the building, and of the business therein transacted. The defendant testified that he owned the building referred to in the information, together with all the furniture therein, including the billiard- and pool-tables, and the bar; that he purchased them about the 28th of December, 1894, at which time a saloon was being run there; that within a few days thereafter he rented the building and furniture to a man by the name of Parks, who conducted the saloon business until the latter part of February, "when he left, and went away"; that on March 6 following he (the defendant) rented the building and all the furniture therein, including the bar and fixtures, at a monthly rental of $40, to a man by the name of Keith, who was a comparative stranger to the defendant, or, as the latter expressed it, "a stake man—he is here, and he is yonder," and required him to pay rent from the 1st day of March; that with the knowledge and consent of the defendant Keith ran a saloon in this building until the evening Hughes was arrested, in September, 1895. The evidence shows that Hughes was frequently in and about the place during this period, for some of the witnesses testified that he attended to, and seemed to

have charge of, the billiard- and pool-tables; that they had purchased cigars from him, and at such times he was behind the bar; and one witness testified that he had on two occasions purchased beer over this bar from the defendant. At the time of his arrest, Hughes had in his possession a key to the building, and with it unlocked the door for the sheriff, who found in the building, in addition to other liquors, two cases of bottled beer, on one of which the seal had not been broken, and the defendant's name was on these cases. While Hughes denied making the sales of beer, and testified that he had but recently married, and that in honor of that event he had purchased the bottled beer to present to his friends as they should call on him, and that only about a half hour had elapsed, at the time of his arrest, since he came into possession of the key to the building; that it had been sent to him by Keith, who "lit out"; and that he had no interest in the business that was carried on in the building, the weight of this, and all other evidence, and the credibility of the witnesses, were for the jury to determine. While we do not hesitate to say that the evidence in support of the verdict of guilty under the nuisance count is very unsatisfactory, we cannot say that there is an entire absence of any legal evidence that the defendant was at least aiding and abetting another in the commission of the offense charged. If he did aid and abet another in maintaining a common nuisance, he would, under the statutes of this state, be liable to the same punishment that might be inflicted had he in fact had the entire charge and management of the business. The jury found him guilty as charged. The verdict was approved by the trial court, and judgment was duly

rendered thereon. Upon the facts disclosed by the record, we do not feel justified in vacating the judgment.

The state concluded the introduction of its testimony at the noon hour, and its counsel then announced that they would be prepared, immediately upon the convening of the court at 1 : 30 P. M., to announce the particular sales upon which the state would rely for a conviction on each of the counts charging illegal sales, which was accordingly done. During the afternoon, witnesses were examined on behalf of the defendant, and rebutting evidence was introduced by the state. The plaintiff made its opening argument and the defendant's counsel had also argued the case before the jury before the hour of adjournment. The court again convened at 7 : 30 P. M., at which time the defendant asked permission to reopen the case for the purpose of introducing the testimony of one Turner, to rebut the evidence of a witness for the state by the name of Brown, who testified that Turner was present at the time the defendant made the two sales of beer above referred to; and it was also desired to show by this witness that Brown, who testified to the sales of beer, had stated that he was to receive a fee for each conviction of the violation of the prohibitory-liquor law which he was instrumental in securing. This application was overruled, and the defendant insists that the court abused its discretion in such ruling. Brown's testimony had all been given in before the noon adjournment of court. No subpœna was issued for this witness, and the record shows that he was in the city all the afternoon. The defendant himself had testified that he did not make the sales to which the witness Brown had testified, and several witnesses were also introduced by the defense to impeach the

testimony of Brown. The defendant had full knowledge, for some time prior to the trial of this case, of the alleged statements by Brown with reference to payment for any conviction of the violation of the law, and failed to have him subpœnaed as a witness. At least a portion of the evidence sought to be introduced was not newly discovered, and the other was cumulative. We cannot say that the court abused its discretion in its ruling upon this motion.

It follows from what has been said that the judgment must be reversed as to the first count, and affirmed as to the eleventh count of the information. The case will be remanded for further proceedings in accordance with the views herein expressed.

All the Judges concurring.