E. H. PERRY & CO. v. ROBERT EAVES *et al.*
No. 89.

1. NEW TRIAL—*Amendment to Motion.* A motion for a new trial cannot be amended by adding thereto a new and independent ground therefor, after the expiration of the time allowed by the statute in which to file such motion.

2. EVIDENCE, *Held Sufficient.* The evidence examined, and found to support the judgment rendered herein.

MEMORANDUM.— Error from Shawnee circuit court; J. B. JOHNSON, judge. Action in replevin by E. H. Perry & Co. against Robert Eaves and John Spear. Judgment for defendants'. Plaintiffs bring the case to this court. Affirmed. The opinion herein, filed July 9, 1896, states the material facts.

*T. W. Harrison,* for plaintiffs in error.

*Curtis & Safford,* and *C. A. Starbird,* for defendants in error.

The opinion of the court was delivered by

CLARK, J. : This action was originally brought by the plaintiffs in error against Robert Eaves, as sole defendant, to recover the value of certain personal property and damages for its detention. They alleged ownership and right of possession of one black horse, a wagon, and set of harness, under and by virtue of a chattel mortgage given by one Diehl to Henry Hursh, dated March 12, 1889, and filed in the office of the register of deeds of Shawnee county on April 11 thereafter, to secure the payment of a note for $265, bearing interest at the rate of 10 per cent. per annum from date, which had been transferred to the plaintiffs by a written assignment thereon, and which note bore indorsements of payments amounting

in the aggregate to $175. They also alleged that they were the owners and entitled to the immediate possession of said property, and, in addition thereto, one bay horse, by virtue of a bill of sale executed by Hursh to them on December 12, 1889 ; that the value of said property was as follows : The black horse, $100, the bay horse, $5, the wagon, $10, and the harness, $10 ; and that they had been damaged by reason of the unlawful detention of the property in the sum of $50, and prayed judgment for $175. A writ of replevin was issued in the action, and the bay horse, wagon and harness were taken into the possession of the officer, but were afterward returned. to Eaves upon the execution by him of a redelivery bond. On January 16 the plaintiffs amended their petition by attaching thereto a copy of the note and mortgage referred to in the petition, and making one John Spear a party defendant, and alleging that Spear had wrongfully detained from them, since December 13, 1889, the black horse, of the value of $100, mentioned in the petition, and that the value of its use was $1 per day ; that the said note was long past due ; that possession of the horse had been demanded of Spear, and its delivery refused by him, and that the plaintiffs had been damaged by such wrongful detention in the sum of $50 ; that there was due on the note and mortgage $150, for which amount they demanded judgment against the defendants. Spear answered, denying that he wrongfully detained the possession of the black horse, denying that it was in his possession at the commencement of this action or at any subsequent date, and alleging that he claimed no interest in or right to its possession, and asked that he be dismissed, with costs. Eaves answered, admitting that he had de-

tained the harness, wagon, and bay horse, alleging that he was ready and willing that the plaintiffs should have judgment against him for their return, offering to confess judgment therefor, and denying the wrongful detention of the black horse. On April 18 the plaintiffs again amended their petition, by alleging that, on or about December 17, 1889, Spear wrongfully took possession of the property described in the original petition, and, without any authority for so doing, sold and delivered the same to defendant Eaves, and wrongfully appropriated the same and the proceeds thereof to his own use; that Spear and Eaves colluded and conspired to put said property into the possession of Eaves, for the purpose of keeping it away from and beyond the reach of the plaintiffs, and that Eaves then secreted the black horse so that he could not be found; that the said property was then of the following value: The black horse, $125, the bay horse, $25, harness, $20, and the wagon, $30; that the value of the use of the black horse was $1 a day, and of the other property a like sum, from the 17th day of December, 1889, and that no part thereof had been paid; and prayed judgment against Spear for the sum of $250, with costs. To this amended petition Spear filed a general denial. A trial was had on June 10, 1891, and, after all the evidence had been introduced, the plaintiffs, by leave of court, again amended their petition "to conform to the proofs," by alleging that the value of the property in controversy was as follows: The black horse, $125, the bay horse, $30, the harness, $25, and the wagon, $40; that the property had a usable value since the 12th day of December, 1889, of $2 per day; and prayed judgment "for the return of said property or the value thereof, to wit, the sum of $250, and for damages in the sum of $2

per day from the 12th day of December, 1889, to the present time, and for costs."

From the foregoing statement, it appears that under the original petition the plaintiffs sought to recover from Eaves $175, for the conversion by him of two horses, a wagon, and a set of harness, and the damages resulting therefrom. Under the original amendment, it was sought to recover from Eaves and Spear $150, the amount due on the Diehl note and mortgage, because of the alleged detention by Spear of the black horse. Under the second amendment, a judgment for $250 was sought to be recovered against Spear alone, because of an alleged conspiracy between him and Eaves to keep the plaintiffs from recovering the possession of the property described in the petition, and the subsequent acts of Eaves in secreting the black horse; while, by the third amendment, which was made at the trial "to conform to the proofs," a judgment was sought, presumably against both defendants, for the return of all the property described in the petition or the value thereof, which was claimed to be $250, and for damages based upon the usable value of the property. We think the allegations of the last amendment are controlling as to the nature of the cause of action upon which the plaintiff relied for a recovery, and that these allegations, when considered in connection with the prayer for judgment, stated an action of replevin, and this was the construction placed thereon by the trial court, which found in favor of the plaintiffs, as against the defendant Eaves, for the return of the property described in the petition, or the value thereof, which was found to be $100, and judgment was entered in accordance therewith. The findings and judgment were in favor of the defendant Spear, for his costs. A motion for

a new trial was duly filed, based on the ground of newly-discovered evidence, and which also alleged that the decision was not sustained by sufficient evidence, and that errors of law occurred at the trial to which exceptions were duly saved. Ten days thereafter the plaintiffs asked leave to amend their motion for a new trial by adding thereto the following additional specifications: "Error in the assessment of the amount of the recovery, the amount being too small." The motion so to amend, as well as the original motion for a new trial, were overruled, to which the plaintiffs excepted, and they have brought the case to this court for review.

An elaborate brief has been filed, in which counsel has reviewed the evidence, attempting to show that the court erred in its findings of fact. But the record shows conclusively that these findings were based upon conflicting evidence. Spear held a bill of sale of the property described in the petition, dated June 11, 1889, which was executed by the then owner, Henry Hursh, and was intended by the parties thereto to operate only as a security for the payment to Spear of the sum of $45, then due him. This bill of sale was filed in the office of the register of deeds two days after its execution. The lien created by it would, of course, be subject to that of the prior mortgage set up in the petition. The property was afterward removed to Butler county, where it remained until December 14, 1889, which was two days subsequent to the date that Hursh executed the bill of sale to Perry & Co. At the time of the execution of this bill of sale the plaintiffs had not seen the property, but Hursh agreed it should be delivered to them within three days from that date. One Gillespie, who brought the property from Butler county under the directions of a man by

the name of Cook, claimed a lien thereon of $22.50 for his services and for the amount claimed to have been paid by him for feed for the stock. The bill of sale to Perry & Co. recited that

"this bill of sale is given subject to the chattel mortgage of $40 in Cook's hand for collection, also a first mortgage given to Diehl for $265, of which there is unpaid $60; this bill of sale to be void in case the said Henry Hursh shall pay back to E. H. Perry & Co. $85 and all costs, with interest at 10 per cent. from date, on or before January 1, 1890."

From these recitals, it would appear that the plaintiffs purchased the property subject to the liens of two mortgages to secure the payment of $100, being a balance of $60 due under the Diehl mortgage, which had been assigned to the plaintiffs prior to the commencement of this action, and of $40 under another mortgage which was held by Cook for collection. There is nothing in the record aside from the recitals of the Perry & Co. bill of sale to indicate in whose favor the mortgage for $40 was given, nor of the existence of such an instrument, save that Spear's bill of sale was intended to operate as a chattel mortgage for the payment of $45, and that a payment of $5 had been indorsed thereon. When the property was brought from Butler county it was driven in front of the office of the plaintiffs in error, and Gillespie then claimed a lien thereon for his services, which Perry & Co. declined to pay. Acting upon the advice of an attorney, Gillespie directed Cook, who was a constable, to sell the property for the payment of the alleged lien of $22.50. It brought at sale somewhere in the neighborhood of $130. The defendant Eaves was the purchaser; he paid Spear $40, and took an assignment of his bill of sale, and one witness testified that Eaves then tendered to Perry & Co. $60, in satisfaction of the

Diehl mortgage, but that they declined to accept it; $62.50 was then deposited in the Citizens Bank to the credit of Spear for the benefit of Perry & Co., it being supposed by Eaves that this would be a sufficient tender to the plaintiffs of that amount of money. Afterward this suit was brought. As a surety for Eaves, Spear signed the redelivery bond in a sum double the value of the property taken under the writ of replevin, and held $50 of the amount so deposited to his credit, to indemnify him as such surety, and paid the balance of the deposit, $12.50, to Eaves's attorney. Probably the sale by Cook was unauthorized, as not having been made in accordance with the requirements of the statute, but neither he nor Gillespie is a party to this action, and, under the findings of the court, Cook was not acting as the agent of either of the defendants in making the sale. While the court erred in several of its rulings upon the admission of evidence, these rulings were generally in favor of the plaintiffs in error. Their witnesses were permitted, over the objection of the defendants, to detail conversations had between the witnesses and third parties in the absence of the defendants, as to statements made by the latter with reference to certain disputed transactions.

Taken as a whole, we think the plaintiffs in error have no just cause for complaint as to the rulings of the court, and that the finding in favor of Spear is supported by the evidence. While the plaintiffs were entitled to recover damages from Eaves for the unlawful detention of the property, the error of the court in failing to allow a recovery therefor must be deemed to have been waived, as a motion for a new trial did not call the attention of the court thereto. One of the specific grounds enumerated in the statute upon which a new trial may be granted is ''error in the as-

sessment in the amount of the recovery, whether too large or too small, where the action is upon a contract, or for the injury or detention of property." The court properly overruled the motion to amend the motion for a new trial, as it set up a new ground therefor and was not filed within the time allowed by the statute. The evidence that was termed "newly discovered" was either cumulative in its character, or its introduction sought for the purpose of discrediting defendants' witnesses; hence, no error was committed in overruling the motion based on the ground of newly-discovered evidence. (*The State v. Hughes*, 3 Kan. App. 95.)

It follows from what has been said that the judgment must be affirmed.

All the Judges concurring.