## JOHN A. TUCKER v. STATE.

No. A-1470.    Opinion Filed July 12, 1912.

Rehearing Opinion Filed August 21, 1912.

1.    **COURTS—Appeal—Written Opinions—Misdemeanors.** By an express provision of the statutes of Oklahoma, this court is not required to prepare written opinions in misdemeanor cases pending before it, but is permitted to render written opinions in misdemeanor cases when in its judgment the public interests may be subserved thereby.

2    **INTOXICATING LIQUORS—Unlawful Sale—Husband and Wife —Evidence.** On a trial where an information charges the illegal sale of intoxicating liquor, and the evidence shows that the sale charged in the information was made by the wife of the defendant at his home, it is competent to introduce testimony of other sales of intoxicating liquor made by the wife at his home, and that large quantities of liquor were kept at the home of the defendant, for the purpose of enabling the jury to determine whether or not the wife was acting for defendant, and that defendant was concerned in the particular sale for which he was being prosecuted, and that such sale constituted a part of a plan or system of the defendant for the sale of liquor.

3.    **SAME—Witnesses — Failure to Testify — Presumption — Appeal.** Where a defendant is being prosecuted for the sale of intoxicating liquor and the state's witnesses testify that such sale was made by his wife at his home, she is a competent witness in his behalf; and if he does not place her upon the witness stand, or account for his failure to do so, such failure will be strongly corroborative of the truhtfulness of the state's testimony; and if there is other testimony in the record connecting the defendant with such sale, a verdict of conviction will not be disturbed on appeal.

(Syllabus by the Court.)

*Appeal from Superior Court, Grady County;*
*Will Linn, Judge.*

John A. Tucker was convicted of violating the prohibitory law, and appeals. Affirmed.

*Bond & Melton* and *Barefoot & Carmichael,* for plaintiff in error.

*Smith C. Matson,* Asst. Atty. Gen., and *C. J. Davenport,* for the State.

PER CURIAM. The plaintiff in error was tried and convicted at the September, 1911, term of the superior court of Grady county on a charge of selling intoxicating liquor, and his punishment fixed at imprisonment in the county jail for a term of thirty days and a fine of fifty dollars. Upon a careful examination of the record we find no material error prejudicial to the substantial rights of the plaintiff in error. The judgment of the trial court is, therefore, affirmed.

ON MOTION FOR REHEARING.

FURMAN, P. J. When this case was first submitted we carefully examined the record and brief of counsel for appellant and came to the conclusion that there was no prejudicial error in the case and filed a memorandum opinion to that effect. Counsel for appellant question the right of the court to render such an opinion. If they will examine the Session Laws of 1910, c. 13, sec. 1, p. 18, they will find the following statute:

"The court of criminal appeals shall render a written opinion in all felony cases within six months after said cases shall have been submitted for decision. * * * Provided, the court may, when in its judgment public interest may be subserved, in like manner render written opinions in misdemeanor cases pending in its court."

This court was so flooded with frivolous appeals, especially in misdemeanor cases, that it was found necessary by the Legislature to check this evil. Some members of the Legislature were in favor of denying appeals in such cases; others were willing to allow appeals in misdemeanor cases, but desired to limit them as far as possible. This statute was passed to relieve this court of the necessity of writing opinions in misdemeanor cases, unless we were of the opinion that the questions raised were of sufficient importance to the public interest to require that this should be done. At the time this statute was passed the court was constantly getting further and further behind with

its business, and it would have been impossible to ever catch up without some relief, so the Legislature passed this statute to relieve the court of the increasing congestion of its docket. Many cases were being appealed simply for delay, and if we had been compelled to write opinions in each, our docket would have constantly become more crowded. The effect of this statute has been most salutary. The number of appeals simply for delay is constantly decreasing, because the court can expeditiously dispose of appeals which are without merit.

In their motion for a rehearing, counsel for appellant strenuously insist that the conviction in this case should be set aside upon the authority of *Smith v. State,* 5 Okla. Cr. 67, 113 Pac. 204. We examined this question when the memorandum opinion was written and we did not think then, and we do not think now, that this case comes within the rule laid down in the Smith case. In Smith's case, Judge Armstrong, speaking for the court, said:

"Where the state charges and relies upon a particular sale, the general rule is that proof of other sales, for the purpose of establishing the particular sale charged, is not admissible. The issue on a criminal trial is single, and the testimony should be confined to the issue; and on trial of a person for one offense the prosecution cannot aid the proof against him by showing that he committed other offenses. Whart. Crim. Ev. par. 104; 1 Bish. Crim. Proc. par. 1120; *State v. Hughes,* 3 Kan. App. 95, 45 Pac. 94; *King v. State,* 66 Miss. 502, 6 South. 188; *Stone v. State,* 7 South. (Miss.) 500; *McClure v. State,* 148 Ala. 625, 42 South. 813."

For the purpose of showing that the rule laid down in Smith's case does not apply to this case, we will now discuss the question fully, although this must not be taken as a precedent that full opinions will be written on motions for a rehearing whenever counsel may be dissatisfied with a memorandum opinion. We would like to write full opinions in all cases, but if we did, it would render the statute useless, and we would soon be completely overwhelmed with the volume of business on our docket, and the enforcement of the criminal laws of the state would be practically paralyzed.

It will be observed that Smith's case only states a general rule, and like all general rules it has its exceptions. In Smith's case the state claimed that the defendant himself made the sale charged in the information. In the case at bar an entirely different state of facts is presented. It was not claimed that appellant sold the whisky in person, or that he was present when the sale was made, or had any personal knowledge of this particular sale. On the contrary, it was shown that the sale was made by his wife during his absence from home. The state was permitted to prove that the defendant and his wife resided in the country, about three miles from the city of Chickasha; that he kept for sale some groceries at the house where he resided; that there was also a great deal of whisky and beer kept at this house, and that his wife made frequent sales of whisky, not only to the party charged in the information, but also to other persons; that sales of whisky had been made to different persons by the wife of appellant; that appellent himself had been seen to deliver whisky to parties, and had been present when other sales had been made by his wife. We think this testimony was admissible for the purpose of showing the system of appellant with reference to selling whisky at his house, and that the sale in question was made in accordance with such system, and that he was concerned therein.

In *Carter v. State,* 6 Okla. Cr. 232, 118 Pac. 264, this court held in a case of embezzlement, where other similar offenses had been testified to which constituted part of a plan or system of embezzlement, that the jury might consider the testimony of such similar offenses for the purpose of determining not only the intent of the defendant, but also as to whether or not the defendant did take the money he was charged with having embezzled. An examination of the authorities cited in Carter's case will show that this is not a new principle of law. That it is applicable to cases of selling whisky by some person other than the defendant is shown by the following authorities:

In *Cumberledge v. State, ante,* 122 Pac. 266, a negro porter in a drug store sold whisky to the prosecuting witness; de-

fendant paid the rent on the building and hired the porter. He denied that he had ever sold whisky or was concerned in its sale, but the judgment of conviction was confirmed, and in the syllabus the court holds:

"Where the evidence shows that a defendant upon trial was concerned in the sale of intoxicating liquors, it is immaterial as to whether or not the sale was made by the defendant or by another person who was acting with defendant."

In *Cook v. State*, 4 Okla. Cr. 519, this court said:

"It is immaterial as to whether the defendant was present when the beer was sold or not. He owned the premises and controlled the business. The negro was simply his servant, and a sale by the negro was a sale by the defendant, and the defendant is responsible for any violation of the prohibitory law committed by the negro porter in his place of business, under the circumstances proven by the testimony in this case."

In *Lancaster et al. v. State*, 2 Okla. Cr. 681, 103 Pac. 1065, this court said:

"The counsel for the defendant insist that the evidence against the defendant Lancaster is not sufficient to sustain the verdict. It is true that no witness swore that Lancaster sold the whisky to Sherwood, or was present when it was sold to him. It was proven that the whisky was sold in the place of business of Luke Jenkins and Ollie Lancaster, and that this place of business was what is called a joint. It was proven that soon after the sale for which these defendants were convicted was made, this joint was raided, and fifty-two bottles of beer were found in the refrigerator behind the bar, and that beer and whisky were found in the warehouse behind the main building. It was proven that the place of business of defendants was fitted up with a bar and fixtures usually found in such resorts. It was proven that Lancaster paid draymen for hauling cases of liquor from the depot to the place of business conducted by the defendants. In the light of the record, we are of the opinion that the evidence not only sustains, but that it required, the verdict rendered by the jury."

And this statement is the basis of the third paragraph of the syllabus, as follows:

"Where the evidence shows that two or more persons are acting together in the commission of an offense, they are both guilty,

although one of them may not be present when the offense is committed."

In *Roach v. State* (Tex.), 84 S. W. 586, the court said:

"Appellant objected to the introduction of evidence of other offenses, claiming the same were in nowise connected with the offense on trial, but related to violations of the local option law on other and different occasions. It will be seen that the other transactions were introduced in order to show appellant's system in the sale of liquor. The testimony here shows that appellant lived in the country, and that prosecutor (who was a neighbor) called at his house on the occasion of the alleged offense, and asked him if he had anything around, or anything about, to which the appellant replied, 'Maybe so; look and see'; that he then went around the house to appellant's smokehouse, which was east of his residence, and separate therefrom some ten or twelve feet (appellant in the meantime having gone into his residence) ; that he found the smokehouse door closed, but not locked. He opened it, and there found a barrel of whisky, and a rubber hose with which to draw the same lying across the barrel, and a jug; that he drew a half gallon of whisky, and left $1.50 on the floor, near the wall on the lefthand side of the door; that appellant was not present at the transaction, and he did not know whether he got the money or not. On the trial appellant's contest appears to be that he did not make any sale, that he did not receive any money for said whisky, and that the evidence failed to connect him with the transaction as a seller. The other transactions objected to were conducted in a similar manner; and we hold, in accordance with the authorities, that this character of testimony was admissible. *Efird v. State,* 71 S. W. 957, 6 Tex. Ct. Rep. 637; *Holler v. State,* 73 S. W. 961, 7 Tex. Ct. Rep. 552."

It is claimed that the evidence here does not sustain a charge that defendant sold the liquor; that it shows only that his wife made the sale. In *State v. Coulter* (Kan), 19 Pac. 368, the court in the syllabus said:

"Where on the trial of a charge for the violation of the prohibitory law it is claimed that the liquor alleged to have been sold was not intoxicating, it is then competent to show sales other than those upon which the state elects to try the defendant, for the purpose of showing the purposes for which said liquor was sold and purchased; and it will make no difference if such

sales were included in a complaint, upon the counts of which defendant had been acquitted."

See, also, *State v. Elliott* (Kan.), 26 Pac. 55.

In *State v. Welch* (N. H.), 15 Atl. 146, the court said:

"On trial of an indictment for the illegal sale of intoxicating liquors, evidence of sale to other persons, within the year next preceding the first day of the term on which the indictment was found, is admissible to show that defendant was engaged in the business of liquor-selling."

In *State v. Peterson* (Minn.), 108 N. W. 6, the court held:

"The admission of evidence, on the trial of an indictment for selling liquor without a license, of sales by defendant to persons other than the one named in the indictment, *held*, in view of the facts disclosed by the record, not error, though it tended to prove the commission of other offenses. Such other sales were a part of the general scheme and plan devised by defendant to continue in the business of selling intoxicating liquor without a license, and were so related to the sale charged as to render the same proper corroborative evidence."

In *Pitner v. State* (Tex), 39 S. W. 662, the court held:

"In a prosecution for illegal sales of liquor, evidence of other sales than that charged in the indictment is admissible to show the system of defendant with reference to selling liquor, and that the sale charged was in accordance with such system."

In *Bennett v. State* (Tex.), 50 S. W. 947, it was held:

"In a prosecution for an illegal sale of liquor, evidence of other sales than that charged is admissible to show the system of defendant with reference to selling liquors, and that the sale charged was in accordance therewith."

See, also, *Hollar v. State* (Tex.), 73 S. W. 961; *Skipworth v. State* (Tex.), 68 S. W. 278; *Efird v. State* (Tex.), 71 S. W. 956; *Holland v. State* (Tex.), 101 S. W. 1005.

In *State v. Roberts*, 55 N. H. 483, the court in the syllabus held:

"Upon the trial of an indictment for unlawfully selling spirituous liquors, evidence having been introduced by the state of a sale by the respondent's wife,—*held*, that it was competent for the state to prove sales by the respondent himself other than those specified in the indictment, at the same place, and about the same time, because such sales by him tend to show that the illegal traffic, was his business, and that the sale of

liquor by his wife was an act done by her as his agent and by his authority."

And in the opinion it is said:

"The prosecution introduced evidence tending to show a sale by the wife of the respondent to Gotchell. Such proof would sustain the indictment; but in order that the respondent should be held liable for a sale made by the hand of his wife, the state would be compelled to show, further, that the wife was acting as his servant or agent in the transaction. Without such evidence the proof of a sale by his wife would go for nothing. It was therefore competent to show sales made by the respondent himself, at the same place, other than the sale charged in the indictment, because such sales by him tended to show that the traffic in liquors there was his business, and therefore that the act of his wife was his act. *State v. Bonney,* 39 N. H. 208; *State v. Colby,* 55 N. H. 72."

In *Commonwealth v. Coughlin,* 14 Gray (Mass.) 389, the facts stated were these:

"Four witnesses were introduced by the government, who proved a number of sales of strong beer, all of which were made by the wife of the defendant in the dwellinghouse occupied by herself and the defendant. The circumstances of the sales were that the witnesses went into the house, called for a quart of beer of the wife; she took their vessels; went, as they supposed, down cellar; brought the vessels back with the beer called for and received from them the pay therefor. There was no evidence that the defendant ever sold or interfered with the sales in any way, except the fact that at two of the sales he happened to be present in the house. * * * Upon these facts the defendant requested the court to rule that there was no greater presumption that the wife, in these sales, was acting for the defendant as his agent, than that she was acting therein for herself. The judges declined so to instruct the jury, but did instruct them that it was evidence that the wife was acting in said sales as the agent of the husband. The jury found the defendant guilty, and he files this exceptions."

The court, through Chief Justice Shaw, in the opinion said:

"The direction was right. The facts that the husband and wife lived together, and that the house was his, there being no evidence that she carried on a separate trade, were competent evidence to go to the jury to prove that she acted as his agent.

*Commonwealth v. Murphy,* 2 Gray, 513; *Commonwealth v. Fitzgerald, ante,* 14. Exceptions overruled."

In *Commonwealth v. Hyland,* 155 Mass. 7, the court, through Mr. Justice Holmes, held:

On a complaint under the Pub. Sts., c. 101, secs. 6. 7, for keeping and maintaining a common nuisance, there was evidence of illegal sales of intoxicating liquors by the wife of the defendant in his tenement, in which they lived together. The defendant testified that he was out of the state at the time of such sales, and that they were made without his knowledge or consent. *Held,* that the case was properly left to the jury, who might disbelieve the defendant and infer that the wife was acting as his agent."

—And said in the opinion:

"The jury may have disbelieved the defendant's testimony. In that case the fact that he and his wife lived together in his tenement was competent evidence to prove that she acted as his agent."

In *Commonwealth v. Lafayette,* 148 Mass. 130, the syllabus reads:

"At the trial of a complaint for an unlawful sale of intoxicating liquors, the alleged purchaser testified, on direct examination, that, upon going to the defendant's house, he found in the kitchen the defendant and a woman that he supposed to be his wife; that he poured rum out of a bottle on the table and drank it; and that he thereupon threw down some money and left the house. On cross-examination he testified that he did not see the defendant, but that the woman, at his request, brought him the glass of rum, and said, 'I will call my husband, if you wish to see him; he is in the next room.' The judge instructed the jury, if they should find that the wife sold the rum as the agent of her husband, the defendant, they could find him guilty. *Held,* that the purchaser's direct testimony, if believed, was sufficient to warrant a conviction; and that the instruction as to the woman's agency was proper, in view of his testimony on cross-examination."

In *Guarreno v. State,* 148 Ala. 637, 32 South. 833, it was held:

"Where, on a trial for an illegal sale of intoxicating liquors, the evidence showed that the sale of liquors was made by the wife of accused at his store, it was necessary to connect accused with the sale, and frequency of such sales by the wife

at the store might authorize the inference that the liquor was kept by accused, and that in making the sales the wife was the agent."

In *Trometer v. District of Columbia,* 24 App. D. C. 247, the court said:

"3. Under the third assignment of error, which is based upon the refusal of the trial judge to direct a verdict in favor of the defendant on the whole testimony, the proposition sought to be established is that the defendant is not liable in a criminal action for the act of his wife, done without his knowledge, consent, authority, or procurement. But this proposition in the present case assumes that as proof which has not been proved, and which remains as a matter of controversy, namely, the authority of the wife to act for her husband in the matter of the sale of liquor. Substantially the same question was considered by this court in the case of *Lehman v. District of Columbia,* 19 App. D. C. 233, and determined adversely to the contention of the appellant, and it is unnecessary to repeat the argument of that case here.

"In the case of *Com. v. Hyland,* 155 Mass. 7, 28 N. E. 1055, the rule was laid down by the Supreme Court of Judicature of Massachusetts through Mr. Justice Holmes, now in the Supreme Court of the United States, that, in prosecution for maintaining a liquor nuisance, where the evidence showed that all sales of liquor had been made by the defendant's wife at his house or tenement, and the defendant testified that if any sales were made by his wife it was without his knowledge or consent, while he was out of the state, the fact that he and his wife lived together in such a tenement was competent evidence that she acted as his agent, and might overcome his own positive testimony to the contrary, if the jury disbelieved the testimony.

"Now, in the present case it is perfectly plain that the jury in the court below, or the police judge acting in the place of a jury upon the situation, as it was disclosed by the testimony of the two policemen, was fully warranted, if he believed that testimony, in inferring an agency in the wife from the husband to do precisely what she did do. A presumption of agency arose from the circumstances and conduct of the parties, as it may aris in all other cases where the sale of the liquor is not made directly by the proprietor of the place who is sought to be held for it. *Lehman v. District of Columbia,* 19 App. D. C. 233. In the absence of contravening testimony such presumption takes the place of direct and positive proof. Here there was such con-

travening testimony; and the question of agency became a vital and essential element of controversy in the case."

In *Commonwealth v. Newhard,* 3 Pa. Super. Ct. 215, the court held:

"Where sales are made by defendant's wife to minors, well known both to defendant and his wife to be such, and where there is evidence that the minors had frequented the saloon and bagatelle room and had been furnished with liquor in his presence, and the case is submitted to the jury, and a verdict of guilty rendered upon proper instructions as to the *bona fides* of defendant's orders forbidding sales to minors, the judgment will not be disturbed."

See, also, *Commonwealth v. Fitzgerald,* 14 Gray (Mass.) 14; *State v. Colby,* 55 N. H. 72.

If the sales were not made by the wife of appellant, as testified to on behalf of the state, she was a competent witness in his behalf. His failure to place her upon the stand, or to account for his failure to do so, was a tacit admission of the truthfulness of the state's testimony. Like Adam of old, his only defense was that the woman did it. This plea did not save Adam, and it should not be permitted to save appellant. In such a case as this a husband should not be permitted to hide behind his wife's skirts. It is true that she might be prosecuted also, but we think that the jury had a right to conclude from the evidence that the appellant was concerned in, and responsible for, this attempt to convert his home into a bootlegging joint. We do not see how the jury could have done otherwise than convict appellant. The instructions of the court were in harmony with the views herein expressed, and it would be a waste of time to discuss them.

The motion for a rehearing is therefore denied.

ARMSTRONG and DOYLE, JJ., concur.