## J. M. DUPREE v. STATE.

### No. A-1680. Opinion Filed July 26, 1913.

#### (134 Pac. 86.)

1. **APPEAL—Harmless Error.** In this state it is the duty of trial judges to see that trials of all criminal cases are conducted fairly and impartially and according to law. The doctrine of harmless error, so frequently invoked by this court, was not established for the purpose of permitting and encouraging trial courts to depart from the established and well-recognized principles governing the trial of criminal cases. It is only in cases wherein the record discloses the fact that the trial court has made an honest effort to follow the law and endeavored to give the accused a fair and impartial trial that this doctrine is invoked. It does not then apply in the trial court, and is only to be applied by the appellate court.

2. **TRIAL—Conduct of Trial—Responsibility of Trial Court.** The trial courts of this state cannot recklessly disregard the rules of law and permit prosecuting attorneys to wring verdicts of guilty from a jury by the introduction of improper evidence and unfair tactics, and then evade the responsibility for such action by permitting the case to be appealed to this court and here reversed. The responsibility is solely with the trial court and the prosecuting attorney, and such responsibility cannot be shirked or placed upon this court.

3. **EVIDENCE—Evidence of Other Crimes.** For testimony which the prosecuting attorney should not have offered, and which the trial court should not have permitted to be introduced, see opinion.

*Appeal from County Court, Oklahoma County;*
*John W. Hayson, Judge.*

J. M. Dupree was convicted of conducting a roulette game, and appeals. Reversed and remanded.

*Harris & Nowlin* and *Kenneth C. Crain,* for plaintiff in error.

*Smith C. Matson,* Asst. Atty. Gen., and *Herbert M. Peck,* for the State.

ARMSTRONG, P. J.  The plaintiff in error, J. M. Dupree, was convicted at the January, 1912, term of the county court of Oklahoma county on a charge of conducting a game of roulette, and his punishment ·fixed by the court at imprisonment in the county jail for a term of six months and a fine of $1,000.

It is contended that the court committed prejudicial error in admitting certain testimony offered by the state over the objection and exception of the accused.  The principal portion of the testimony objected to is as follows:

Witness Witcher, being examined by the county attorney:

"Q.  Do you know whether or not prior to July, 1911, Mr. Dupree had his home and lived at the Fair Grounds Hotel?  By Claude Nowlin: Objected to for the reason that it is incompetent, irrelevant, and immaterial.  By the Court: Overruled, and exception allowed the defendant.  A. Yes, sir.  Q. You were— what official position did you hold prior to July, 1911?  A. I was in the sheriff's office.  Q. Did you have any occasion to go out there prior to July, 1911?  A. Yes, sir.  Q. For what purpose did you go out there?  By Claude Nowlin: Objected to for the reason that it is incompetent, irrelevant, and immaterial.  By the Court: Overruled, and exceptions allowed the defendant.  A. Raiding.  Q. What did you find?  A. Well—  By Claude Nowlin: Objected to for the reason that it is incompetent, irrelevant, and immaterial, and prejudicial.  By Sam Hooker: The question is withdrawn.  Q. For what purpose were you raiding out there?  For what?  By Claude Nowlin: Same objection.  By the Court: Overruled, and exceptions allowed the defendant.  A. Why, whisky and beer.  By Claude Nowlin: Defendant moves to strike the answer of the witness for the reason that it is incompetent, irrelevant, and immaterial to the issues in this case.  By the Court: Overruled, and exceptions allowed the defendant."

Witness Niblo, being examined by the county attorney:

"Q.  Did you see a Klondike game up there in operation?  Mr. Nowlin: Objected to as immaterial, if the court please.  The Court: Overruled.  Mr. Nowlin: Exception.  A. Yes, sir; I think so.  Q. Do you know who was the dealer at the Klondike

game? Mr. Nowlin: Hold on a minute. This man is not charged with running a klondike game. The Court: Overruled. Mr. Nowlin: Exception. A. I know him when I see him. Q. What do they call him? A. They call him Charley. Q. Did you ever see anybody else deal that Klondike up there besides Charley, in January, 1912? Mr. Nowlin: Objected to as incompetent, irrelevant, and immaterial; having nothing to do with this particular case. The Court: Overruled. Mr. Nowlin: Exception. A. Yes, I have saw another man at the Klondike table that I didn't know. On one occasion, this man they call Charley was dealing, and he left the room, for some cause or other, and Mr. Dupree was standing there, and Charley says to him, 'Take this chair'—'take this'—or 'look after this chair'—or something of that kind, and Mr. Dupree sat down in the chair and picked up the dice box."

After the foregoing proceedings were had, the county attorney called J. S. Powers, clerk of the county court, and the following examination was conducted:

"Q. Mr. Powers, what official position do you occupy? A. Clerk of the county court of Oklahoma county. Q. How long have you been clerk of the county court? A. Since January 9, 1911. Q. Do you know the defendant, J. M. Dupree? A. I do. Q. I will get you to state whether or not the records of your court show any informations having been filed in the court during the year 1911, charging the defendant, Dupree, with operating a gambling house during the year 1911. Mr. Nowlin: Just a minute. Wait a minute. We object to this question as incompetent, irrelevant, and immaterial, and prejudicial. The Court: The objection, at this time, will be overruled. Mr. Nowlin: Exception. The Court: Exception allowed. Q. Answer the question. A. I have. Q. I will get you to refer to case 2427 on your appearance docket. I will get you to state what disposition was made of that case. Mr. Nowlin: Objected to, as incompetent, irrelevant, and immaterial, and not the best evidence. The Court: The objection is overruled. A. March 7th J. M. Dupree was arrested and brought before the court. Q. What disposition was made of the case? I will ask you in a minute about the other. Mr. Nowlin: Objected to as wholly incompetent, irrelevant, immaterial, prejudicial, and not the best evidence of what disposition was made of it. The Court: Overruled, and exception allowed the defendant. A. On March 7th the defendant plead guilty and was fined, and judgment entered $100 and costs, which was paid. Q. All right. I will ask you whether or not you—

Mr. Nowlin: We move to strike out the answer and all of his evidence, and ask that the jury be instructed not to consider it, as incompetent, irrelevant, immaterial, and prejudicial. The Court: The motion to strike is overruled. Mr. Nowlin: Exception. * * * Q. I will ask you whether you have cases 3133 and 3159. A. I have. Q. Against whom were those cases? A. J. M. Dupree and others. Q. Does your record show what disposition was made of those cases? Mr. Nowlin: Same objection—incompetent, irrelevant, and immaterial. The Court: He may answer that question direct, whether the record shows what disposition was made of them. A. It does. Q. I will get you to examine the files in those cases which have just been referred to, and state whether or not those are the cases (handing papers to witness). Mr. Nowlin: Objected to as incompetent, irrelevant, and immaterial, and prejudicial. The Court: Overruled. Mr. Nowlin: Exception. Mr. Hooker: I ask leave of the court to introduce in evidence the informations in those cases, and the judgments—the record showing the disposition thereof. Mr. Nowlin: Objected to as wholly incompetent, irrelevant, and immaterial, and prejudicial. The Court: Are you asking to introduce 3159 and 3133? Mr. Hooker: The informations in those cases, and the record showing the disposition thereof. The Court: For what purpose? Mr. Hooker: For the purpose of showing he paid a fine for gambling. The Court: The objection is overruled, and exception allowed. Let them be introduced. Mr. Nowlin: Exception."

A true copy of said informations, so introduced in evidence, was and is in the words and figures following, to wit:

"In the County Court in and for Oklahoma County, State of Oklahoma. The State of Oklahoma, Plaintiff, v. J. M. Dupree and Alfred Son, Defendants. Information. In the name and by the authority of the state of Oklahoma comes now Sam Hooker, the duly qualified and acting county attorney in and for Oklahoma county, state of Oklahoma, and on his official oath gives the county court in and for Oklahoma county and state of Oklahoma to know and to be informed that the above-named J. M. Dupree and Alfred Son did, in Oklahoma county and in the state of Oklahoma, on the 30th day of November in the year A. D. 1911, commit the crime of conducting a game of chance, in manner and form as follows: That they did then and there wrongfully, willfully, and unlawfully conduct as owners a certain gambling game, commonly known as roulette; the same being a banking and percentage game, played with a roulette wheel,

for money and other representatives of value, contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the state of Oklahoma. Sam Hooker, County Attorney, Oklahoma County.

"State of Oklahoma, Oklahoma County, ss.: I, J. H. Ready, being duly sworn, on my oath declare that the statements set forth in the above information are true. J. H. Ready.

"Subscribed and sworn to before me this 1st day of December, 1911. James S. Powers, Clerk of the County Court, by Joe O'Leary, Deputy. [Seal.]"

Indorsed:

"3133. In the County Court. Information. The State of Oklahoma, Plaintiff, v. J. M. Dupree, Defendant. Names of witnesses: S. A. Bradford, Frank Marsh, John Dillon, C. W. Wakefield, L. K. Reynolds, S. K. Bernstein. I have examined the facts in this case and recommend that a warrant do issue. Sam Hooker, County Attorney, by J. H. Ready, Assistant County Attorney. Filed in County Court of Oklahoma County, Okla., Dec. 1, 1911. James S. Powers, Clerk, by Joe O'Leary, Deputy."

"In the County Court in and for Oklahoma County, State of Oklahoma. The State of Oklahoma v. J. M. Dupree and Texas Bob, Defendants. Information. In the name and by the authority of the state of Oklahoma comes now Sam Hooker, the duly qualified and acting county attorney in and for Oklahoma county and state of Oklahoma, and on his official oath gives the county court in and for said Oklahoma county and state of Oklahoma to know and to be informed that the above-named J. M. Dupree and Texas Bob did, in Oklahoma county and in the state of Oklahoma, on the 16th day of November in the year A. D. 1911, commit the crime of operating a game of roulette, in manner and form as follows. They did unlawfully conduct and operate a game known as roulette; the same being then and there played with a wheel and a marble, for money and other representatives of value, contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the state. Sam Hooker, County Attorney, Oklahoma County.

"State of Oklahoma, Oklahoma County, ss.: I, Sam Hooker, being duly sworn, on my oath declare that the statements set forth in the above information are true. Sam Hooker.

"Subscribed and sworn to before me this 16th day of December, 1911. James S. Powers, Clerk of the County Court. [Seal.]"

Indorsed:

"3159. In the County Court. Information. The State of Oklahoma, Plaintiff, v. ———, Defendants. Names of witnesses: C. C. Brown, H. M. Peck, S. K. Bernstein, [and others]. I have examined the facts in this case and recommend that a warrant do issue. Sam Hooker, County Attorney. Filed in County Court of Oklahoma County, Okla., Dec. 16, 1911. James S. Powers, Clerk of the County Court."

"Q. Turn to your record, now, and tell what disposition was made of case 3133. Mr. Nowlin: Objected to, as wholly incompetent, irrelevant, and immaterial under the issues in this case, and prejudicial to the defendant, and at a time long previous, and seeking to prejudice this defendant on compromised cases between him and the county attorney heretofore. The Court: Overruled. Mr. Nowlin: Exception. A. January 1 [10], 1912, J. M. Dupree entered a plea of guilty to a charge of gambling, and fined $50 and costs. Mr. Nowlin: I move to strike that out, as wholly incompetent, irrelevant, and immaterial. The Court: The motion to strike is overruled. Mr. Nowlin: Exception. Q. What is the number? A. 3133. Q. What disposition was made of 3159? Mr. Nowlin: Same objection. The Court: Overruled. Mr. Nowlin: Exception. A. On January 10, 1912, defendant entered a plea of guilty to a charge of gambling, and fined $100 and costs. Mr. Nowlin: I move to strike out, as wholly incompetent, irrelevant, and immaterial, and prejudicial, and hasn't anything to do with this case. The Court: The motion is overruled. Mr. Nowlin: Exception. Q. What disposition was made of case 2427? Mr. Nowlin: Same objection. The Court: Objection sustained until it is introduced. Mr. Hooker: What did the court say? The Court: Sustained. As I understand it, that is not in evidence yet. Mr. Hooker: I ask leave to introduce that, too. The Court: You introduced 3133 and 3159. Mr. Hooker: Now I ask leave to introduce the information in 2427. Mr. Nowlin: Objected to, as incompetent, irrelevant, and immaterial."

E. Van Mousel was then put on the stand and the following examination was had by the county attorney:

"Q. Did you see the defendant, Dupree, on that date? A. Well, on which date? Q. Either on the 6th or the 7th. A. Well, now, I can't say that I did. Q. What did you see going on there on those dates, Mr. Van Mousel? A. Well, there was a roulette game, crap table, and Klondike game. Q. What were those games played with? A. Some of them played with chips, and some of them played with money. Q. Did you see the defendant on or about the 9th or 10th of January, 1912, at 6½ North Broadway?

Mr. Nowlin: Objected to as relating to a time after this information was filed. The Court:. Overruled. Mr. Nowlin: Exception. A. How's that? Q. Did you see Dupree at that place about the 9th or 10th of January, 1912? A. Well, about the 9th. I think I seen Mr. Dupree on the 9th. Q. What was he doing there at that time? A. Well, he was in the house, walking about. Q. Did you see a Klondike game in operation on that date? Mr. Nowlin: Objected to, as wholly immaterial. This is a game of roulette, two days before. The Court: Overruled. Mr. Nowlin: Exception. A. Yes, sir. Q. Do you know who was operating that game of Klondike—what they call the dealer? A. Why, a man named Charley. Q. Do you know what his other name is? A. No, sir. Q. Did Charley operate. that game during all the time you were there? Mr. Nowlin: Objected to, as wholly immaterial, incompetent, and irrelevant. The Court: Overruled. A. With the exception of just a few minutes. Q. Who operated the game while Charley wasn't there? Mr. Nowlin: Objected to, as assuming that it was operated at all while Charley wasn't there—incompetent, irrelevant, and immaterial. The Court: Overruled. Mr. Nowlin: Exception. Q. Answer the question. A. Why, a man they called Dupe. Q. Is that the gentleman there (indicating defendant, Dupree)? A. Well, he resembles the man. Q. Tell the jury whether or not Mr. Dupree is the man you saw operate that game of Klondike while Mr. Charley stepped out? Mr. Nowlin: Objected to, as incompetent, irrelevant, and immaterial, not cross-examination, and a repetition. The Court: Overruled. Mr. Nowlin: Exception. A. Well, shall I answer that? Q. Yes. Do you know whether that is the man? You saw the man, didn't you? A. Well, now, I am going to answer that the way I seen it. Q. That's the way I want it. A. That's it. This man called Charley, he wanted to go—to leave the house, I guess, or some place—and he spoke to this man and says, 'You watch this thing while I am gone,' and this man walked behind the table. Q. What did he do when he walked behind the table? Mr. Nowlin: Objected to as incompetent, irrelevant, and immaterial. A. Just stood there, or sat down. Q. Is this the man (indicating)? A. Well, I am pretty sure that is the man."

The foregoing evidence, elicited by the county attorney over the objections of counsel for the accused, has no reference or bearing in the remotest degree on the issue being tried before the court and jury. This evidence shows that some time prior to July, 1911, a raid was made, and whisky and beer found at a place occupied by the accused; that at various other times

charges of gambling had been filed against the accused. In some instances he had paid fines therefor; none of them having any connection or bearing upon the case then under consideration. We have been called upon repeatedly to review records disclosing conditions similar to those disclosed by the foregoing excerpts from the record in the case at bar. It is doubtful if any of them, however, disclose a more reckless disregard for the rights of a person on trial.

In *Smith v. State,* 5 Okla. Cr. 68, 113 Pac. 204, this court said:

"The issue on a criminal trial is single, and the testimony should be confined to the issue; and on trial of a person for one offense the prosecution cannot aid the proof against him by showing that he committed other offenses. Whart. Crim. Ev. par. 104; 1 Bish. Crim. Proc. par. 1120; *State v. Hughes,* 3 Kan. App. 95, 45 Pac. 94; *King v. State,* 66 Miss. 502, 6 South. 188; *Stone v. State* (Miss.) 7 South. 500; *McClure v. State,* 148 Ala. 625, 42 South. 813."

The reason and justice of the rule is apparent, and its observance is necessary to prevent injustice in criminal prosecutions. Bishop says that:

"To permit such evidence would be to put a man's whole life in issue on a charge of a single unlawful act, and crush him by irrelevant matter which he could not be prepared to meet." (1 Bish. Crim. Proc. par. 1124.)

See *Smith v. State,* 3 Okla. Cr. 629, 108 Pac. 418. Also *Vickers v. United States,* 1 Okla. Cr. 452, 98 Pac. 467; *Hill v. State,* 3 Okla. Cr. 686, 109 Pac. 291.

In the case under consideration the accused did not testify, and it cannot be contended that the testimony was introduced for any other purpose than to aid the state in securing a conviction on the particular charge covered by the information. In *Rea v. State,* 3 Okla. Cr. 269, 105 Pac. 381, this court said:

"The defendant should have been tried on the facts of the particular case then before the court. The question submitted to the jury was as to the guilt of the defendant on the charge then upon trial, and any reference to any former trial, indictments, or convictions was improper. *Slater v. United States,* 1 Okla. Cr. 275, 98 Pac. 110."

In *People v. Schweitzer,* 23 Mich. 301, the Supreme Court of Michigan says:

"The general rule is well settled that the prosecution is not allowed to prove the commission of another and distinct offense, though of the same kind as that charged, for the purpose of rendering it more probable in the minds of the jury that he committed the offense for which he is on trial; and this would be the natural and inevitable effect upon the minds of the jury, of the admission of such evidence, on whatever ground or pretense it might be admitted; and the defendant would thus be prejudiced on the trial of the offense charged by proof, which he has no reason to anticipate, of an offense for which he is not on trial, and to which, when properly called upon to defend, he may have a perfect defense."

In *People v. Flanigan,* 42 App. Div. 318, 59 N. Y. Supp. 101, the court says:

"It is an elementary principle of law that the commission of one crime is not admissible in evidence upon the trial for another, where its sole purpose is to show that the defendant has been guilty of other crimes, and would consequently be more likely to commit the offense charged."

See, also, *People v. Romano,* 84 App. Div. 318, 82 N. Y. Supp. 749; *Kessinger v. State* (Tex. Cr. App.) 71 S. W. 597; *Hill v. State,* 44 Tex. Cr. R. 603, 73 S. W. 9; *State v. Fitchette,* 88 Minn. 145, 92 N. W. 527.

The views of this court on this question have been expressed in later opinions by each member thereof. In the case of *Thompson v. State,* 9 Okla. Cr. 525, 132 Pac. 695, decided at the last term of the court, in an opinion written by Doyle, J., this character of conduct upon the part of prosecuting attorneys and trial courts is discussed, and the court there says:

"It would seem that the prosecuting attorney labored under the delusion that, if the defendant was generally reputed to be guilty of the offense charged, that would be sufficient to sustain a conviction in the absence of rebutting evidence. * * * The evidence of the general reputation of the defendant's barn was incompetent and not admissible. A man cannot be condemned on what a few of his unfriendly neighbors say of him or of his home in cases like this. Such evidence is merely hearsay, and its admission was prejudicial to the defendant."

In the case of *Jelts v. State,* 7 Okla. Cr. 734, 123 Pac. 1131, a Per Curiam opinion written by the present presiding judge of this court, we said:

"This court has always been exceedingly liberal with the prosecuting attorneys of this state, and endeavors always to uphold every proper conviction brought here on appeal. But a prosecuting attorney should not permit his high office to be prostituted in the interest of malice or oppression. He should not be guilty of indulging in the character of examination disclosed by this record. It does not make any difference how guilty a man is, he ought to be tried in a fair and impartial manner, and according to law. Prosecuting attorneys are not charged with the duty of securing convictions by improper methods. They should see that substantial justice is meted out in the manner provided by law, and no conviction should be sought or demanded unless it can be had by compliance with the safeguards and rules established to prevent oppression. A conviction had under the circumstances disclosed by the record under consideration cannot be sustained."

Undue zealousness upon the part of county attorneys sometimes grows out of the heat of the trial; but just what would prompt a court to permit such proceedings is beyond our comprehension. He is charged with the duty and it is his sworn duty, to protect the rights of the accused as much as the rights of the people. There is no excuse and little justification for a trial court permitting proceedings of the kind we are compelled to review in this case.

In the case of *Hager v. State, ante,* 133 Pac. 263, the opinion having been written by Furman, J., the court, among other things, says:

"The doctrine of harmless error will become intolerable if absolute fairness is not accorded defendants upon trial. The idea which some prosecuting attorneys and trial judges appear to entertain, that, when a defendant is upon trial charged with a criminal offense, he has no rights which courts and prosecuting attorneys are bound to respect, has no foundation in justice or in law. Every man is presumed to be innocent until his guilt has been established in a fair trial to the satisfaction of the jury beyond a reasonable doubt."

And further:

"The cross-examination in the case at bar is full of insinuations and intimations that appellant was guilty of a number of offenses, which could not be otherwise than prejudicial to appellant, and upon this ground alone the judgment of the trial court will be reversed and the couse remanded for a new trial. This court stands squarely for the doctrine of harmless error; but it is equally committed to the doctrine that fairness must prevail in the trial of criminal cases. We will not tolerate police court methods in courts of record."

We do not want to be called upon again to review records disclosing conditions which have been discussed in these opinions. If a trial court through inadvertence or otherwise permits a conviction to be had in the manner disclosed by the record in this case, and the cases cited, the judgment should be set aside, and a new trial granted. The responsibility is solely his, and that responsibility cannot be shirked.

There are a number of other questions raised by counsel for the plaintiff in error, none of which are likely to recur upon a retrial of this cause. We will therefore refrain from discussing them.

For the error indicated, the judgment is reversed, and the cause remanded, with direction to the trial court to permit the county attorney to file an amended information, and grant a new trial.

DOYLE and FURMAN, JJ., concur.