JOHN SATTERFIELD v. STATE.

No. A-5040. Opinion Filed Oct 24. 1925.
(240 Pac. 151.)

J. N. Fortner, for plaintiff in error.

George F. Short, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for the State.

EDWARDS, J.   From a conviction in the district court of McCurtain county upon a charge of larceny of domestic animals, the plaintiff in error, hereinafter called defendant, has appealed.

The defendant relies upon two propositions: First, insufficiency of the evidence; second, error of the court in admitting incompetent evidence.

The first assignment requires no discussion. There is an abundance of evidence to sustain the verdict, and we think it not necessary to review the positive character of this testimony.   If this were the only assignment of error, we should promptly affirm the case.   The second assignment, that the court admitted incompetent evidence, is directed to testimony of several witnesses tending to prove defendant guilty of other independent larcenies of live stock. The fundamental rule of evidence that the issue in a crim-

inal trial is single and the testimony should be confined to the one offense charged in the information was almost wholly ignored. The information charged the larceny of a certain cow belonging to Jenkins Riley. The following excerpts from the evidence will disclose the nature of those errors. In the testimony of the witness Skiwall, the following took place:

"Q. Did Granville Allen, in your presence, on Sunday before the trial had on August 6, 1923, say that Mr. Satterfield got one of his cattle and when he found it or caught up with it he paid for it? (Objection, overruled, exception). A. He did. * * * Q. John Satterfield present? A. No. * * *"

The witness F. R. Abbott was permitted to testify as follows:

"Q. You know David Galloway? A. Yes, sir. * * * Q. I will ask if about one week before John Satterfield was arrested charged with the offense for which he is being tried he didn't come to your office in Idabel and state to you that John Satterfield was getting the C. L. Ellers cattle, had gotten two and killed one and sold it to the Kuykendall market? (Objection, overruled, exception.) * * * A. The statement is not exact. Q. Did he make it in substance?

"A. Yes, sir. * * *"

Houston Hutchinson gave this testimony:

"Q. Did you lose any cattle in 1921? A. Yes, sir. (Objection, overruled, exception.) Q. What were you doing in John Satterfield's pasture? A. Looking for my yearlings. Q. Did you find any of the cows you lost? A. No, sir. (Objection, overruled, exception.) Q. Ever find your yearlings? (Objection, overruled, exception.) A. He offered to pay me for my calf. Q. Who do you mean by he? A. Mr. Satterfield. Q. Offered to do what? A. To pay me for the yearling he made away with. (Objection, overruled, exception.) Q. Tell the jury again. (Objection, overruled, exception.) A. Gentlemen, while out there looking for my stock—I had lost three head, one horse— and was looking for them, I was informed he had them and

I went to find my stock— Q. Tell the jury what he offered to pay for? A. For my yearling, offered me a red sow. Mr. McClimons didn't like red hogs, and I said I couldn't take it, couldn't take anything but money, and he said, 'I will bring the hog to you. * * *' "

Here the court took a hand, and the following took place:

"By the Court: Q. You say he offered to pay for the yearling? A. Yes, sir. Q. Did you lose that yearling? A. I lost the mother to this calf, and he put a brand on it and made away with the cow. Q. He branded the yearling? A. Yes, sir. Q. You gave him your consent? A. No, sir. Q. On before you knew it? A. Yes, sir. Q. And after it was on it you say he offered to pay for it? A. Yes, sir; I will tell you how it was. Q. No. When did you find out the brand was on your yearling? A. Yearling came to the cowpen. Q. You say some one told you about it? A. No, sir. Q. How come him to talk to you? A. He saw the yearling in my cowpen.

"The Court: Objection overruled, and motion to strike denied.

"Mr. Fortner: To which the defendant excepts. * * *

"Mr. Hudson: Q. Did you ever find the cow that went off with the calf?

"Mr. Fortner: Objected to as incompetent, irrelevant, and immaterial.

"The Court: Overruled.

"Mr. Fortner: We except. A. ——. Q. And the calf come home with Satterfield's brand? A. Yes, sir. * * *"

The matters referred to in the testimony of the witnesses set out are about matters entirely different to the charge of larceny of the cow of Jenkins Riley, and are not offered as tending to show a plan or scheme, nor is it within any exception under which evidence of other offenses might be admissible. It is of course elemental that the commission of one crime is not admissible in evidence upon the trial of a

defendant for another. This testimony in no wise tended to prove the defendant guilty of the larceny of the Riley cow, unless it be that under the idea that if he was guilty of the larceny of other animals he was probably guilty in the case on trial. The evidence could not be other than highly prejudicial.

This court has had occasion frequently to announce the rule of law governing this class of testimony. In the case of Smith v. State, 5 Okla. Cr. 67, 113 P. 204, it was said:

"The issue on a criminal trial is single, and the testimony should be confined to the issue; and on trial of a person for one offense the prosecution cannot aid the proof against him by showing that he committed other offenses. Whart. Crim. Ev. par. 104; 1 Bish. Crim. Proc. par. 1120; State v. Hughes, 3 Kan. App. 95, 45 P. 94; King v. State, 66 Miss. 502, 6 So. 188; Stone v. State, 7 So. (Miss.) 500; McClure v. State, 148 Ala. 625, 42 So. 813. The reason and justice of the rule is apparent, and its observance is necessary to prevent injustice in criminal prosecutions. Bishop says that 'to permit such evidence would be to put a man's whole life in issue on a charge of a single unlawful act, and crush him by irrelevant matter which he could not be prepared to meet.' 1 Bish. Crim. Proc. par. 1124."

See Smith v. State, 3 Okla. Cr. 629, 108 P. 418. Also Vickers v. U. S., 1 Okla. Cr. 452, 98 P. 467; Hill v. State, 3 Okla. Cr. 686, 109 P. 291.

In the case of Cantrell v. State, 12 Okla. Cr. 534, 159 P. 1092, it was held:

"It is error prejudicial to the rights of the person on trial for the court to permit evidence of the general reputation of such person for the commission of the same or similar crimes to the one charged. The law is that the prisoner at the bar can be tried only for the crime charged against him, and not upon his reputation for having committed other crimes."

The following cases are also enlightening on this subject: Koontz v. State, 10 Okla. Cr. 553, 139 P. 842, Ann. Cas. 1916 A, 989; Baldwin v. State, 11 Okla. Cr. 228, 144 P. 634; Ap-

pleby v. State, 11 Okla. Cr. 284, 146 P. 228; Miller v. State, 13 Okla. Cr. 176, 163 P. 131, L. R. A. 1917D, 383.

The admission of this evidence clearly deprived the defendant of a fair and impartial trial.

The case is reversed and remanded.

BESSEY, P. J., and DOYLE, J., concur.