## DICK TEAGUE v. STATE.

No. A-8943.   Nov. 1, 1935.
Rehearing Denied Nov. 22, 1935.
(52 Pac. [2d] 91.)

240

Arney & Barker and R. F. Shutler, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess W. Pullen, Asst. Atty. Gen., and Roy H. Mead, Co. Atty., for the State.

EDWARDS, J. Plaintiff in error, hereinafter called defendant, was convicted in the district court of Kingfisher county of robbery with firearms, and was sentenced to serve a term of 20 years in the state penitentiary. At about 9 o'clock, at night, on the date charged, Jim Sandusky, an automobile dealer at Kingfisher, drove into his garage and was there seized by two persons who forced him to drive his car south into Canadian county and to turn off on a side road to a schoolhouse where they tied him, took his money, and then departed with the car. About a week later, defendant and one Mike Gault, who was jointly charged, after some resistance were apprehended with the car at Paducah, Tex. Defendant, under a fictitious name, had just registered the car in Texas. They had in the car two Colts special and an automatic pistol. Questioned by the sheriff, defendant gave a fictitious name and told the sheriff he lived at Amarillo and was a cattle buyer. Further he said that he did not take money from people who needed it. Defendant had $550 in money on his person, and offered the sheriff $500 to release them. He also requested the sheriff to return to him, or tear up,

some car title papers found on his person. A severance was had, and only the defendant Teague was on trial. Defendant did not take the stand, but made the defense of alibi by the testimony of his wife, father-in-law, and sister-in-law of Oklahoma City; by his codefendant, Gault; and by some other testimony. Defendant's wife and relatives testified defendant spent the night of the robbery at his father-in-law's home in Oklahoma City, where his wife was staying at the time, and that he and Gault left early the next morning for Roger Mills county on business. Gault testified they spent the night at Oklahoma City, left early the next morning, went to the residence of one Hays, near Canute, in Custer county; that they got there about 8:30 o'clock, and spent the day. The next day they went to a place owned by defendant in Roger Mills county and found it being burglarized by one "Blackie" Picklesimer and some other person, and, after some negotiations, Picklesimer agreed to pay Teague $100 for the damage he had done, and then gave them the title papers to the car with the understanding they were to meet him a day or two later in Shamrock, Tex., where he would pay them the $100. That they sold defendant's car at Elk City, and on the day appointed procured some one to drive them to Shamrock, where they met Picklesimer who informed them he did not have the money, but if they would go with him to Paducah he would procure it. That they did go to Paducah and there were arrested with the stolen car; but at the time of the arrest Picklesimer had gone across the street to a filling station, and he was now in the penitentiary at McAlester. This explanation of the possession of the car, the purported agreement with Picklesimer, the procuring of a Texas tag under a fictitious name, the statements to and the offer to bribe the sheriff to release them, are so fantastic we are not surprised defendant did

not take the stand, and are not surprised the jury did not believe it. Upon the facts stated, which omit various details which probably would make it more unreasonable, we have no doubt defendant was either one of the actual robbers of Sandusky, or was in complicity with whoever actually took the car.

Considering the extremely difficult state of facts with which they had to deal, defendant's counsel have briefed the case well. It is first contended the evidence is insufficient. On this point they argue that since Sandusky could not identify the persons who robbed him, and since two witnesses, one at Hinton and one at Weatherford, testified that about this time some persons attempted to sell them a Chevrolet car answering the general description of the stolen car, considered with the testimony of alibi, the jury could not reasonably and logically find a verdict of guilty. We are not in accord with this conclusion, and without elaborating on the reasons are satisfied an intelligent jury could have no reasonable doubt of the defendant's connection with the robbery, either as a participant or in complicity with the robbers.

Complaint is made that the court erred in certain instructions. This is directed mainly to instruction 7, which is in the language of section 1808, Okla. Stat. 1931. The argument admits correctness as an abstract proposition of law, but insists there is no evidence which warrants this charge. True, there is no direct testimony that defendant was an accomplice of someone else, who committed the actual robbery. Such deduction, however, may arise from testimony offered by defendant to the effect he met Picklesimer at his place with the stolen car two days after the robbery; that Picklesimer there gave him the title papers; that he again met Picklesimer at Shamrock, Tex.,

and went with him to Paducah, Tex.; and that Picklesimer was in the immediate vicinity when defendant was arrested. O. R. Findley, a witness for defendant, who resided at Hinton, testified that on the day after the robbery two persons came to his place and attempted to sell him a Chevrolet answering the description of the stolen car, and one of them called the other "Blackie," the name by which Picklesimer was known. There was no error in the giving of this instruction.

It is further argued under this assignment the court erred in his instruction on the law of alibi, which was as follows:

"You are instructed that one of the defenses interposed by the defendant in this case is what is known, in law, as an 'alibi'; that is, that the defendant, at the time of the commission of the alleged crime, was at another place, or so far away that he could not have participated in the commission thereof. The defendant is not required to prove this defense beyond a reasonable doubt, but it is sufficient in this respect, if, from a consideration of all the evidence in the case, you have reasonable doubt of the presence of the defendant at the time and place of the commission of the crime charged in the information. But, upon the other hand, you are instructed that if, after a full, fair and impartial consideration of all the evidence in the case, together with all the other facts and circumstances appearing in evidence upon the trial of the case, you feel that you are satisfied, beyond a reasonable doubt, of the guilt of the defendant, then it would be your duty to return a verdict finding the defendant guilty as charged in the information."

The objection is that it does not tell the jury that if they entertain a reasonable doubt as to the presence of the defendant at the time and the place of the commission of the crime charged that they should give the defendant the benefit of the doubt and acquit him. When the court

told the jury if they should find, beyond a reasonable doubt, the guilt of defendant, it would be their duty to return a verdict of guilty, he should have gone further and have told the jury unless they should so find they should find defendant not guilty. In failing to do so the instruction is condemned. However, the jury must have understood they were required to find guilt beyond a reasonable doubt, or, if they had a reasonable doubt, they must return a verdict of not guilty. No exception was taken to this instruction, and the motion for new trial does not particularly point out this instruction, but merely refers to "certain instructions to the jury, which were duly objected to by defendant." This instruction, not having been objected to, does not fall within the purview of the motion for new trial, and in any event would not require a reversal.

Defendant insists the court erred in admitting incompetent evidence. This is directed to various items, several of which will be noticed. The sheriff at Paducah testified that when he arrested defendant he found $550 on his person. It is argued this was prejudicial, since it had been shown that only a few dollars was taken from Sandusky at the robbery; hence this testimony had no bearing on the case. This testimony had no direct bearing on the case, but since the sheriff testified and it was undenied that defendant at his arrest had title papers and keys to another car besides the car of Sandusky and offered the sheriff a bribe of $500 to release him and his codefendant, Gault, it was admissible as going to his ability to pay such bribe, and as a circumstance to corroborate the testimony of the sheriff. It is generally held that an offer of a bribe is a circumstance indicating guilt. 8 R. C. L. p. 193; 16 C. J. p. 541, § 1024 and p. 549, § 1057f; Wigmore, vol. 1, p. 354, § 277.

Under this assignment, complaint is made the court erred in permitting the codefendant, Gault, to be brought into the courtroom at one time for identification and comparison by a witness who had testified he saw defendant and Gault in the town of Kingfisher on the afternoon preceding the robbery. Defendant contends the identification of Gault would in nowise connect defendant with the robbery. It was the state's theory that defendant and Gault were acting together in the robbery and in disposing of the car, the fruits of the robbery. There was no error in this procedure. There is complaint also to the testimony of one Smith, negro boy, who testified he saw defendant and Gault at Granite on the day they were arrested at Paducah. Witness, an inmate of the reformatory, testified he was going to work in a reformatory car and saw defendant and Gault drive into a filling station; that witness' home was Kingfisher, and he noticed this particular car because Sandusky's name was on it; presumably on the tire cover on the rear. That later this witness, while confined in the jail at Kingfisher, talked to defendant and told him of seeing him at Granite, and that defendant then told witness he was arrested on the afternoon of the same day in Texas.

It is urged the county attorney, during the trial, referred to the fact defendant had not testified. This contention arose as follows: Witness Smith was called on rebuttal and testified, as above set out, of a conversation with defendant in the jail, thus:

"Q. What was said about that with reference to the time he was arrested? Mr. Shutler: That is objected to as incompetent, irrelevant and immaterial, no proper foundation laid; this is not rebuttal testimony. Nowhere was that question asked of Mr. Teague. They are introducing new evidence that is not rebuttal. Mr. Firestone: He

wasn't on the stand, we couldn't ask him. Mr. Arney: Now we move to have the remarks of counsel stricken from the record. The Court: The jury will not consider any remarks of counsel made outside the record."

Defendant argues this was a violation of section 3068, Okla. Stat. 1931, which, in substance, forbids mention on the trial of the fact defendant did not testify; citing several cases. This statute is for the protection of a defendant in his constitutional right against incriminating himself. The statute gives him the election to testify or not, and his failure to testify is not subject to comment by counsel for the state, and, if mentioned, is a ground for a new trial. This being for the benefit of a defendant, he may waive it. Where defendant's counsel mentions the failure of defendant to testify, it is not error if counsel for state answer such comment. Cherry v. State, 33 Okla. Cr. 37, 241 Pac. 833; Everidge v. State, 50 Okla. Cr. 144, 3 Pac. (2d) 750. In Radney v. State, 36 Okla. Cr. 240, 253 Pac. 913, it is said that a defendant may not complain of an error which he himself has invited or which he has waived either expressly or impliedly. In Cherry v. State, supra, this court said: "It is not reversible error for counsel for the state to comment on the failure of a defendant to testify, where defendant's counsel himself first comments on the fact that the defendant did not take the stand."

Defendant's counsel, by his objection, suggested defendant had testified, and counsel for the state met that objection by stating, in substance, he had not testified. The objection of defendant's counsel opened the subject of defendant being a witness. It was a waiver of what otherwise would have been an error by counsel for the state.

Defendant argues the court permitted the state to introduce incompetent testimony constituting an attack on defendant's character and tending to show the commission by him of some independent crime; citing 16 C. J. p. 586, §§ 1125-1132; Satterfield v. State, 32 Okla. Cr. 98, 240 Pac. 151. The testimony objected to does not constitute an attack on defendant's character and does not tend to prove him guilty of some other offense. When co-defendant Gault testified for defendant he was asked on direct examination particularly with reference to the confinement both of himself and defendant in jail, since the arrest at Paducah. The state, by the witness Smith, in rebuttal brought out that a part of this time he was not confined in the jail, but was confined in the penitentiary. There was no suggestion he was confined in the penitentiary for any other crime. This evidence was of no particular importance, and was not prejudicial. Where more than one defendant is involved, it is not unusual that different defendants are at times confined in separate places. There was no objection to this testimony nor motion to strike. It is a general rule that the admitting of incompetent testimony, unless fundamentally erroneous, will not be considered by this court, unless objected to at the time and an exception saved to an adverse ruling.

Defendant also earnestly contends the court erred in not instructing the jury on the law of circumstantial evidence. Where circumstantial evidence alone is relied on for a conviction, it is the duty of the court to instruct on the law applicable thereto on his own motion, and he must so instruct when requested by defendant. When, however, the case rests on circumstantial evidence, and no request for an instruction on the law of circumstantial evidence is made by defendant, the failure does not constitute reversible error; the presumption being that defendant is

satisfied with the charge. Bock v. State, 34 Okla. Cr. 313, 246 Pac. 642; Breedlove v. State, 49 Okla. Cr. 428, 295 Pac. 239; Newcomb v. State, 23 Okla. Cr. 172, 213 Pac. 900; Klaber et al. v. State, 35 Okla. Cr. 238, 250 Pac. 142; Ayers v. State, 53 Okla. Cr. 89, 7 Pac. (2d) 918, 919.

Upon the consideration of the entire record, we are satisfied defendant was fairly tried, that the evidence fully sustains the verdict and judgment, and that the trial was free from material error. The case is affirmed.

DAVENPORT, P. J., and DOYLE, J., concur.