Estell LASTER, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13219.

Court of Criminal Appeals of Oklahoma.

Nov. 7, 1962.

J. Russell Swanson, Enid, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

NIX, Presiding Judge.

Estell Laster, hereinafter referred to as the defendant, was charged by Information in the District Court of Garfield County with the crime of Selling Intoxicating Liquor to a Minor. He was tried before a jury, found guilty and sentenced to 6 months in jail and to pay a fine of $300.00.

Defendant lodged his appeal in this Court within the time prescribed, listing numerous assignments of error upon which he relies for reversal. Defendant was charged with the unlawful sale of liquor to Clifford Little Coyote, a lad 15 years of age. The complaining witness was in jail in the city of Enid, Oklahoma. He was taken out of jail by police officers and, along with the County Attorney, went to the vicinity of Laster Cafe where defendant was given two dollars. He proceeded into the cafe, purchased a pint of moonshine whiskey and returned. He gave the whiskey to one of the officers, a Mr. Henderson. Several officers, and a chemist for the State Crime Bureau iden-

tified the contents of the bottle as being alcohol 49% by volume, or 98 proof.

The complaining witness testified as follows:

"Q. You went to the Laster Cafe? Is that correct?

"A. Yes.

"Q. Now where is the Laster Cafe?

"A. I don't know the address.

"Q. Well, is it in the City of Enid?

"A. Yes.

"Q. And what did you buy there?

"A. Some whiskey.

"Q. How much did you pay for it?

"A. $2.00.

"Q. From whom did you receive the $2.00?

"A. From the police down at the city.

"Q. What took place when you arrived? Would you tell the court what took place at the cafe?

"A. I went up there and asked Mr. Laster if I could have some whiskey, and he said, 'yes, but—'

"Q. —Now then, is Mr. Laster in the court room?

"A. Yes.

"Q. Would you point him out to the court and the jury.

"A. The man in the blue shirt.

"Q. What was Mr. Laster doing when you arrived?

"A. Painting.

"Q. What was he painting?

"A. A window on the front.

"Q. Was he inside or outside the house?

"A. Outside.

"Q. Which side of the house was he on?

"A. The south side.

"Q. What did you ask him when you went up there?

"A. Asked him if I could have some whiskey.

"Q. What did he say, if anything?

"A. He said, 'Yes.' He told his wife —I believe it was his wife—to go get it for him.

"Q. And what took place then?

"A. We went inside and she went in the back there and I waited and when I was waiting, there was a Bond Bread man and I believe a Royal Crown Cola man that came in. We went in the west room there and I gave her the money and she gave me the whiskey."

Defendant did not take the stand, nor did his wife, but put on three witnesses who testified that they were at Laster Cafe on the day in question. One was there practically all day, one at the time officers arrived, and one from 1:00 til 3:35 P.M., and they all testified that Clifford Little Coyote never visited the cafe during the time of their presence. In fact, they all denied seeing an Indian about the premises at any time.

Defendant's paramount contention of error involves testimony given by the prosecuting witness relating another sale separate and distinct from the one for which he was being tried. The testimony was abduced by the county attorney, in chief:

"Q. Mr. Little Coyote, as I understood your testimony under cross-examination, you were in jail and the police officers came to you with this idea of going down *there again.* Is that correct?

"A. Yes.

"Q. What were you in jail for?

"A. Public Drunk.

"Q. And where had you been drunk?

"A. Here in Enid.

"Q. Had you been drinking?

"A. Yes.

"Q. What had you been drinking?

"A. Whiskey.

"Q. Where did you get the whiskey?

"MR. SWANSON: Now we object to any matter of possible other reference.

"(Off-the-record discussion at the bar between the court and counsel.)

"THE COURT: In view of the defense of entrapment and agency here, I believe I will overrule the objection and let him answer there, in view of the peculiar circumstances. Overruled.

"Q. From whom did you purchase the whiskey you drank that caused you to be arrested for public drunk?

"A. Mr. Laster.

"THE COURT: Ladies and gentlemen of the jury, you will not consider that as any evidence of guilt in this case at all and the court has only permitted that evidence to go to you for one purpose, and that is for the purpose of determining, if it does in any manner assist you, who was the originator of the idea of going there to this particular place and whether the thought and plan first came from this witness or from a police officer or some other person, and you will not consider that for any other purpose, except on the question, as the court has indicated to you, of whose idea, if any person's idea, it was to go down to the Laster Cafe. The court repeats, it is no evidence whatsoever of guilt of the defendant here on the charge on which he is being tried and you will not so consider it, and I will allow you an exception to that."

This constitutes evidence of a sale of liquor separate and distinct from the charge for which defendant was on trial and is ground for reversal. ·

This Court laid down the rule in concise language in the case of Huges v. State, 51 Okl.Cr. 11, 299 P. 240, wherein it said:

"Where the State charges and relies upon a particular sale to constitute a violation of the prohibition law, it is error for the court to permit proof of other sales."

Also see, Emerson v. State, 18 Okl.Cr. 109, 193 P. 743; Alexander v. State, 24 Okl. Cr. 435, 218 P. 543; Satterfield v. State, 32 Okl.Cr. 98, 240 P. 151.

In the case of Smith v. State, 5 Okl.Cr. 67, 113 P. 204, a very early decision, the Court said:

"Where the state charges and relies upon a particular sale to constitute a violation of the prohibition law, it is error for the court to permit proof of other sales, and to instruct the jury that the same was admitted for the purpose of showing whether or not the defendant sold the intoxicants to the paritcular person named in the information."

In the instant case the trial Judge was laboring under the impression, and he so indicated by his oral instruction to the jury, that defendant contemplated the defense of entrapment and therefore the evidence was admissible to show the officers were in good faith in believing defendant to be a bootlegger. But it developed that no evidence was introduced to support the defense of entrapment. If defendant had presented evidence of entrapment, there is law to the effect that then evidence of other offenses would have been admissable, but only in rebuttal. In the case at bar, the record is void of any testimony that the defendant was lured or induced into the offense through entrapment. The only evidence produced by the defendant was to the effect that Little Coyote was not present at Lasters place of business as alleged, leaving the inference that he did not visit the Laster place on the day in question, and therefore could not have made the purchase.

In the case of State v. Parr, Mont., 129 Mont. 175, 283 P.2d 1086, 55 A.L.R.2d 1313, it was said in a case almost identical to the case at bar:

"Had the issue of entrapment been properly presented in the case by some evidence on behalf of defendant, then it would also have been proper for the

state to show, as it attempted to do here, that the officers were acting on good faith and in the belief based upon reasonable information that defendant was engaged in selling whiskey to minors contrary to law." Compare Anot. 33 A.L.R.2d 908.

The testimony was incompetent and constitutes reversible error.

The defendant further complains that the County Attorney was guilty of misconduct in his argument to the jury. In this regard, the following appeared in the record:

"MR. SWANSON: Comes now the defendant, during closing argument of the prosecuting attorney, and immediately following a statement in that argument by the prosecuting attorney to the effect that if defendant desired to present evidence with regard to entrapment, he could take the witness stand to do so, and defendant moves the court for a mistrial because of such improper conduct on the part of the assistant county attorney, calling the attention of the jury to the fact that the defendant had not taken the witness stand.

"THE COURT: What was your statement, Mr. North?

"MR. NORTH: My statement, in words as closely as I can remember, is this. I was answering Mr. Swanson's statement that the state did not prove that entrapment and agency did not take place. My remark was "We don't have to." That is a defense and the defendant has to prove it. The burden is on him. It is no burden, beyond a reasonable doubt, on us.

"THE COURT: I believe I will overrule the motion at this time. It is pretty close. If the court of appeals would find that you stated what Mr. Swanson said here, it would be an awfully close question.

"MR. NORTH: I don't think that can be established. I'm quite sure it can't.

"MR. SWANSON: That is true. The reporter wasn't in here taking it, but I think it can be established by witnesses.

"THE COURT: I will overrule the motion."

■■ If the County Attorney made the remark as alleged by defense counsel, it would have constituted reversible error of premium quality. However, the county attorney denied the allegation, and the trial judge was evidently preoccupied and didn't hear the argument in question. The argument was not recorded, therefore, we cannot judge the controversy. This Court has held in a very early decision, Miller v. State, 9 Okl.Cr. 255, 131 P. 717, L.R.A. 1915A, 1088, that:

"improper remarks made by a prosecuting attorney in his argument to the jury must be incorporated in the case-made and certified to by the trial judge before they can be considered upon appeal. Such remarks cannot be presented by affidavit or in any other manner * * *, unless it appears from the record that counsel for the defendant requested the trial judge to have such remarks taken down by the stenographer, in order that he might incorporate * * * in the record; and the court had refused to have this done."

Defendant also argues that the judge committed error by instructing the jury to fix the punishment under the old law, (Title 37, O.S. § 5). It is contended that the trial judge committed error in not instructing the jury that the punishment should be fixed as prescribed under the new law. (Title 37 O.S. § 537.) However, this may be corrected in a re-trial of the case.

For the foregoing reasons, the judgment and sentence of the trial court is hereby set aside, and the case is Reversed and Remanded for a new trial in accordance with this decision.

BRETT and BUSSEY, JJ., concur.