William Hosley WATSON, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

Cr. No. A–13222.

Court of Criminal Appeals of Oklahoma.

Nov. 14, 1962.

As Corrected Nov. 21, 1962.

Rehearing Denied May 8, 1963.

Hudson & Hamilton, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge.

This is an appeal by case-made from a judgment and sentence rendered against Dr. William Hosley Watson, hereinafter referred to as defendant, by the District Court of Oklahoma County, fixing defendant's punishment at Five Years in the State Penitentiary at McAlester and assessing a fine of One Thousand Dollars ($1,000.00) for the Crime of Illegal Sale of Narcotic Drugs.

The defendant's first assignment of error is that the arrest of Dr. Watson was made without a warrant and that the search and seizure of $800.00, incident to said arrest, was an unlawful and illegal search and seizure in violation of his constitutional rights.

Briefly, the facts giving rise to the arrest as disclosed by the record are that on the morning of May 10, 1961, Arnold Moseley, Director of the Narcotics Division, State of Oklahoma, accompanied by Ted Hagstrom, Oklahoma Narcotics Division, Deputy Sheriff Frank Lynch, Larkin Lamb, Richard Mack and Police Officer Bill Mize went to office of Dr. Watson at Nicoma Park, Oklahoma County, Oklahoma. That Moseley had advised the officers, above named, that he was going to attempt to purchase narcotics from Dr. Watson, and that if he were successful in so doing, he would tip his hat as he emerged from the building.

The officers remained outside the building and Agent Moseley, posing as Al Mason, entered the building, where he purchased one ounce of cocaine hydrochloride from defendant, Dr. Watson, for the sum of $800.00. Moseley paid defendant $800 in Twenty-dollar bills whose serial numbers had previously been recorded on a sepa-

rate sheet of paper, procuring the one ounce bottle of cocaine from defendant, from which the defendant, in the presence of Moseley, scraped all of the "strip stamps" (showing that the Federal Tax had been paid on the drug) and the label off the bottle.

Moseley then emerged from the building, tipped his hat as a signal to make the arrest, and when walking by Agent Hagstrom and Deputy Sheriff Lynch, "held up the bottle to show them that I had the cocaine hydrochloride, and said, 'Go in and get him' ".

Agent Hagstrom entered the building, and in the presence of other officers, placed defendant under arrest, and the defendant produced from his right hand trouser pocket $800.00 in Twenty-dollar bills, the serial numbers of which were identical with those previously recorded by Director Moseley.

 It should here be observed that the $800.00 in Twenty-dollar bills, which defendant now asserts was illegally obtained by unlawful search and seizure, was admitted into evidence by agreement of counsel for defendant and the State, and that no objection was interposed to the admission of the same. Under these circumstances, we follow the rule set forth in Veales v. State, Okl.Cr., 374 P.2d 792, wherein this Court said: (Syl. 1 and 2)

"1. An objection to evidence obtained by illegal search and seizure must be interposed at first opportunity and should be made either at beginning of trial by motion to suppress evidence or in the course of examination as soon as it becomes apparent that State will rely thereon, and defendants' failure to make timely objections waives right to be heard upon this question.

"2. The objection to illegal evidence where known to the accused should be made by Motion or otherwise before trial begins but may be made during the trial when the evidence is offered. The objection is not timely when such evidence is developed and admitted without objection, and is raised at conclusion of State's evidence by a Demurrer or Motion for Directed Verdict."

 Assuming, however, that a timely objection had been interposed to the admission of this evidence, this assignment of error would be completely without merit, for we have repeatedly held that:

"If a * * * peace officer arrest a person without a warrant, he is not bound to show in his justification a felony actually committed, to render the arrest lawful; but if he suspects one on his own knowledge of facts; or *upon facts communicated to him by others,* and thereupon he has reasonable ground to believe that the accused has been guilty of felony, the arrest is not unlawful. * * *" Welch v. State, 30 Okl.Cr. 330, 236 P. 68, 70, 72. (Italics ours).

In the instant case, a felony had, in fact, been committed, and the officers were legally justified in arresting the accused on suspicion of having committed the felony. Kittrell v. State, 96 Okl.Cr. 301, 253 P.2d 853.

From the facts as set forth above, it is abundantly clear that the prearranged signal to arrest defendant by Director Moseley's "tipping of the hat" was as effective in conveying to the arresting officers the information the defendant had sold narcotics, as it would have been for Moseley to have orally communicated that fact.

The next three assignments of error urged by defendant are predicated upon the assumption that when defense counsel announces that the defense will be entrapment, the state must not only prove the illegal sale of narcotics, but, must prove, in chief, that the officers did not lure the defendant into making a sale which he otherwise would not have made. This assumption is clearly erroneous.

 The defense of entrapment, like self-defense, is an affirmative one (People v. Braddock, 41 Cal.2d 794, 264 P.2d 521; State v. Parr, 129 Mont. 175, 283 P.2d 1086, 55 A.L.R.2d 1313; People v. Lee, 9

Cal.App.2d 99, 48 P.2d 1003), and before it can be considered by the jury, there must appear some evidence which, if believed, would reasonably tend to establish the fact that defendant was lured into the commission of the crime by officers.

■ In Riddle v. State, Okl.Cr., 373 P.2d 832, this Court defined entrapment as:

" * * * the planning of an offense by an officer, or someone acting under his direction, and his procurement by improper inducement of its commission by one who would not have perpetrated it, except for the trickery of the officer." (See also Savage v. State, Okl.Cr., 304 P.2d 344)

■ The mere statement of counsel that his defense would be entrapment could not, in our view, be treated as any evidence for the consideration of the jury. In 15 Am. Jur., Criminal Law, § 335, at p. 24, it is said:

"It may therefore be stated as a general rule that where the doing of a particular act is a crime regardless of the consent of anyone, the courts are agreed that if the criminal intent originates in the mind of the accused and the criminal offense is completed, the fact that an opportunity is furnished or that the accused is aided in the commission of the crime in order to secure the evidence necessary to prosecute him therefor constitutes no defense. To the argument that the act is done at the instigation or solicitation of an agent of the government, the courts have responded that the purpose of the detective is not to solicit the commission of the offense but to ascertain if the defendant is engaged in an unlawful business. It is no defense that a person acting as a decoy, furnished an opportunity for the commission of the offense. Such conduct is held not to procure the offense to be committed, the theory being that the offender acts of his own volition and is simply caught in his own devices."

It is asserted by defendant that the trial court abused its discretion in allowing the county attorney to misuse the right of cross-examination of defendant by directing his examination into matters not inquired about in direct examination.

■ With this contention, we cannot agree. The placing of defendant upon the witness stand, then asking him only a few brief questions, does not limit and restrict the field of cross-examination by the State.

In Scearce v. State, Okl.Cr., 326 P.2d 1065, this Court held:

"When a defendant goes upon the witness stand and testifies in his own behalf, the prosecution has the right to cross-examine him with the same latitude as any other witness. His cross-examination is not confined to a mere categorical review of the matters stated in the direct examination. He may be asked any question on cross-examination pertaining to the matters at issue, or that goes to his credibility as a witness."

In the case at bar, the scope of cross-examination was further extended when, as a part of his testimony in chief, defendant interposed the defense of entrapment and offered evidence in support thereof.

■ With such a plea, it is incumbent upon the defendant to introduce some evidence tending to establish the same, and the State has the right to extend its cross-examination to show that defendant was not the type of person who would have needed to be entrapped. (See, Riddle v. State, supra.)

■ Defendant next contends that the trial court erred in allowing certain evidence to be introduced by one of the alleged informers as rebuttal evidence "which was purely evidence in chief and not in rebuttal". In our opinion, this assignment is likewise without merit.

For the testimony of Agent Cliff Roberts, Oklahoma Narcotics Bureau, did not become competent until after the defendant had introduced evidence tending to sup-

port the defense of entrapment, i. e. the testimony of Dr. Watson. It then became competent for the State to show that the cocaine was offered for sale by the defendant, and that in making the purchase, the State only provided the opportunity for the defendant to commit the crime.

> "When the defense of entrapment is offered by some evidence on part of defendant, it is then admissable for State to offer proof of other offenses closely connected to show that officers were acting in good faith. Such other acts on the part of defendant are admissable as rebuttal evidence only." Laster v. State, Okl.Cr., 376 P.2d 635.

The defendant's last assignment of error is based upon the refusal of the State to disclose the identity of the persons from whom Director Arnold Moseley secured the information that the defendant had cocaine for sale.

It is asserted by the defendant that although he sought the identity of these informers at the preliminary hearing prior to proceeding to trial in the instant case, that the state claimed the "informer's privilege" and, that it was only during the course of the trial that the court required the state to disclose the informers' identity. It is urged by the defendant that since he relied upon the defense of entrapment, he was entitled to know the informers' identity prior to proceeding to trial in order that he might properly prepare his defense. Defendant relies primarily upon Roviaro v. U. S., 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, wherein the Supreme Court stated the rule there applied in Syllabus Eight (8):

> "8. The government's privilege to withhold disclosure of an informer's identity must give way, where the disclosure of his identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause; in these situations the trial court may require disclosure and, if the

government withholds the information, dismiss the action."

The Attorney General in response to this argument also relies upon the Roviaro case, supra, and in the State's brief argues:

> "Counsel relied chiefly upon the decision of the United States Supreme Court in Raviaro [Roviaro] V. United [States] (Supra). On the contrary the Court in this opinion recognizes the existence of the Rule officially prevailing and pursuant to which prosecution may refuse to reveal the identity of 'informers'."

> \* \* \* \* \* \*

> " \* \* \* (it) is stated in paragraph 1 of the footnotes \* \* \* :

> " '1. By permitting the government to withhold disclosure of the identity of its informer the trial court commits reversible error where the informer, an undercover government employee, had taken a material part in bringing about the defendant's possession of heroin which was the basis of an indictment charging the defendant with a violation of the Narcotic Drugs Import and Export Act, *was the sole participant, together with the defendant in the transaction charged,* might be a material witness as to whether the defendant knowingly transported the drugs as charged, and *was the only witness in a position to amplify or contradict the testimony of government witnesses,* and where, moreover a government witness testified that the informer denied knowing the defendant or ever having seen him before.' (Italics added)

> "In the case at bar \* \* \* in all the proceedings, beginning with the preliminary information itself, the identity of Al Mason as Arnold Moseley was revealed, and he was so identified by the defendant when on the witness

stand. The opinion of the U. S. Supreme Court in the above case is therefore, adverse rather than favorable to the contention of counsel in this case."

In applying the rule set forth in the Roviaro case, supra, to the facts in the instant case, we are constrained to agree with the Attorney General for the testimony of Agent Cliff Roberts (one of the informers) related to conversations with the accused which occurred prior to the sale for which the defendant stands convicted and was not material or admissable in the instant case until the defense of entrapment was properly raised by evidence reasonably tending to establish the same. The informers' testimony then became competent in rebuttal, but its admission as part of the state's case in chief, prior to the interposition of the affirmative defense of entrapment would have constituted reversable error, under the authority of Laster v. State, supra.

We must therefore conclude that, the testimony of the informants being inadmissable and immaterial as a part of the state's case in chief, it was not error to refuse to reveal the identity of said informers prior to proceeding to trial. We are of the opinion that the defendant was not, under the facts of the instant case, entitled to know the identity of the informants prior to trial, and are of the opinion that the state's refusal to make such disclosure did not injure or prejudice the defendant in any way.

In oral argument before this court on September 17, 1962, it was urged that the punishment imposed is excessive. To this argument we need only observe that the defendant was a member of a highly respected profession, bound not only by law, but by the ethics of his profession to alleviate the sufferings of humanity, and that for his own personal gain he sold narcotics to an unknown buyer. As a member of his profession, the defendant was aware of the moral consequences of such an act, of the suffering degradation and untold human misery caused by those who illegally traffic in narcotic drugs. The firm action of the jury in fixing the punishment at the maximum, which could be imposed, was justified under the facts and circumstances of the instant case, and they are to be commended. Those who traffic in the illicted sale of narcotics cannot be deterred by the imposition of minimum sentences.

For the reasons herein stated, the judgment and sentence of the trial court is hereby, affirmed.

NIX, P. J., and BRETT, J., concur.