Roy Elden NEAL and Paul Everett Neal, Appellants,

v.

The STATE of Oklahoma, Appellee.

No. F–74–359.

Court of Criminal Appeals of Oklahoma.

Dec. 10, 1974.

Rehearing Denied Dec. 31, 1974.

Ed McConnel, Oklahoma City, for appellants.

Larry Derryberry, Atty. Gen., Kenneth L. Delashaw, Jr., Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Presiding Judge:

Appellants, Roy Elden Neal and Paul Everett Neal, hereinafter referred to as defendants, were charged, tried and convicted in the District Court, Payne County, Oklahoma, Case No. CRF-73-76, for the offense of Burglary in the Second Degree, in violation of 21 O.S., § 1435. Their punishments were both fixed at a term of four (4) years' imprisonment. From said judgments and sentences, they have perfected their timely appeals to this Court.

Gilford Duggan, manager and part owner of the Forty North Apartments in Still-water, Oklahoma, testified that on March 29, 1973, between 1:30 and 2:00 p. m., while in his apartment, an alarm system attached to the automatic washers in the apartment house laundry sounded. Duggan walked to his front bedroom, peered through the window and observed the two defendants inside the laundry. Defendant Paul Neal was inside the laundry at the farthest machine from the door while defendant Roy Neal stood at the door of the laundry peering down the sidewalk. Duggan attempted to call the apartment house office but was unable to contact any one. He obtained his rifle, walked outside toward. the laundry, and observed, through the door which was opened wide, defendant Paul Neal taking money from one of the coin boxes on one of the washers. Duggan approached the laundry room, looked through a window, and observed defendant Paul Neal at the third laundry machine from the door. After looking through the window Duggan eased to the door whereupon he observed defendant Paul Neal make a motion with his arms as if he were throwing something. Duggan instructed Roy Neal to walk from the laundry room. Defendants protested stating they had permission to be on the premises further stating they were lock salesmen. The pair was escorted to the apartment complex office. Duggan instructed an assistant manager to station himself at the door of the laundry. After the police were summoned to the apartment complex, Duggan and Officer Hargroves proceeded to the laundry room. Following a search of the area a vending machine key, identified as State's Exhibit No. 1 was found. From a further inspection of the washers they ascertained only one machine in the laundry room still had money in its coin box. Duggan testified that on the previous Friday he had washed laundry in one of the machines and on this date he inspected the coin box and found that it contained money. On the day in question, the following Thursday, only the far west washer still had money in its coin box. Duggan finally related that he and Hargroves found

State's Exhibit No. 2, an instrument used in making vending machine keys, on the couch in the office where the defendants sat while being held for the police.

Detective Roger Bastion of the Stillwater Police Department related that on the day in question he was dispatched at approximately 3:00 p. m. to the above mentioned location. He corroborated Duggan's testimony establishing that the inside of the laundry was visible from Duggan's apartment window. Further, Bastion related that he obtained a tubular type key, State's Exhibit No. 1, from between two washers in the laundry room. Bastion further related he found a laundry basket setting between two machines which contained both clothing and a considerable quantity of quarters. Bastion identified State's Exhibit No. 4 as being a straw basket with clothing inside and stated that he ascertained that there were two layers of clothes with a layer of quarters between each layer of clothes. He identified State's Exhibit No. 5 as $8.75 in quarters and State's Exhibit No. 6 as a container of $15.25 in quarters, both retrieved from the laundry basket. Bastion stated that after investigating the area he returned to the complex office, advised defendants of their rights and after a search of defendant Paul Neal found change in the amount of $52.46, approximately $50.00 of this being in quarters. Bastion related that he and Duggan found an instrument, State's Exhibit No. 2, a lock smith's tool, under a cushion where defendant Paul Neal had been sitting.

Thereafter the State rested.

Defendant Paul Neal testified he was employed as a self-employed motel consultant and admitted to being at the apartments on the date in question. He stated that his brother, co-defendant Roy Eldon Neal, worked for a development company by the name of Baca Grande and that he was a salesman for that company. He stated that business had been slow so they decided to develop some leads through the use of "colored quarters," a sales promotion which they described in detail. It was for this reason that they were in the apartment complex as they were distributing at random cards which promoted their sales. Following the distribution Paul Neal decided to call his wife in Oklahoma City. He testified that he saw what he thought was the apartment office, proceeded thereto, and startled a "long haired man" who came out of the door and brushed past him. He walked in and found that it was not an office but a laundry room and observed that there was not a pay telephone inside. As he was leaving the laundry room Duggan stopped his brother with a gun and escorted them to the apartment office. Defendant identified defense exhibits Nos. 3 through 8 as photographs of the laundromat under what he stated were conditions similar to visual conditions on the date of the arrest. All photographs indicated that it was difficult to see into the room.

Defendant Roy Neal testified he was a salesman from Oklahoma City and in substance corroborated his brother's testimony. He related that he gave the police a card which denoted the name of "Key Securities" which he testified authorized him to sell securities in Wichita, Kansas. The defendant, however, admitted that the card was void as it had expired on August 14, 1968.

Thereafter the defense rested.

The State presented rebuttal testimony establishing the photographs which depicted that it was difficult to see inside the laundry were not accurate representations of an observation of the same area with the naked eye. Further, the details of discrepancies regarding conditions surrounding the photographs and the conditions existing at the time of the burglary, were established by this witness.

On surrebuttal Tom Beadles, an Oklahoma State University student, testified that he, his fiancée, and defendant Paul Neal took the picture alluded to above and related that he ascertained there were no

trick angles or anything done to make the pictures unnatural.

■ Defense counsel argues in his first proposition this case requires reversal for the reason the prosecutor cross-examined the defendant regarding his silence at the time of arrest and made reference to same in closing argument. We observe the argument and cross-examination taken out of context are prohibited arguments under our recent decisions of Buchanan v. State, Okl.Cr., 523 P.2d 1134 (1974) and Miles v. State, Okl.Cr., 525 P.2d 1249 (1974). We therefore will not set them forth in detail in this opinion. As pointed out in the State's brief, however, there is an additional consideration in resolving the issue in this case. At page 73 of the transcript of trial, defendant Paul Neal on direct examination in presenting his defense, stated as follows:

"A. . . . I believe Detective Bastion said, 'What are you doing here?' and I said, 'Well—', no, I asked him what it was all about and he read me this thing off the card about you have the right to remain silent, the right to an attorney or something of that nature, and so, when he said that, he said, 'Do you have any statement to make, what are you doing here?' and I said, 'Well, it looks like it's pretty serious, whatever it is, and you seem to be upset about it, so I'll take your advise (sic) that you've read me off that card and not say anything.' "

The above comment made by defendant Paul Neal opened to the prosecutor an area of permissible inquiry on cross-examination. By defendant's declaring his reasons for remaining silent at arrest, the prosecutor gained authority to cross-examine him on these reasons and extended to the prosecutor authority to comment upon the fact that defendant so testified. See Teague v. State, 58 Okl.Cr. 239, 52 P.2d 91 (1935); Soper v. State, 22 Okl.Cr. 27, 208 P. 1044 (1921); Tilford v. State, Okl.Cr., 437 P.2d 261 (1967) and Cleary v. State, Okl.Cr., 491 P.2d 782 (1971). The prose-

cutor did not specifically argue an impermissible inference from this silence. Consequently, defendant waived his objection to the cross-examination and argument. We therefore find this argument to be without merit.

Defense counsel next urges the evidence is insufficient to support the verdict. In support of this argument he urges that the proof does not comply with the requirements set forth in Bly v. State, Okl.Cr., 485 P.2d 479 (1971). In the *Bly* case this Court held that to prove an offense of burglary of a vending machine the serial number of the machine alleged to have been burglarized must be proven as a part of proving the elements of the offense. The body of the Information as amended in the instant case reads as follows:

"Charles H. Hedrick, District Attorney of Payne County, State of Oklahoma, under and virtue of the authority vested in him as District Attorney, gives this Honorable Court to know and be informed in the name and by the authority of the State of Oklahoma, at the January, 1973, term of said court, that at and in the County of Payne and the State of Oklahoma, on the 29th day of March, 1973, ROY ELDON NEAL and PAUL EVERETT NEAL, while acting together and conjointly, did commit the crime of BURGLARY IN THE SECOND DEGREE in the following form and fashion, to-wit: that is to say that the said defendants, ROY ELDON NEAL and PAUL EVERETT NEAL, while acting together and conjointly, then and there being, did willfully, wrongfully, unlawfully and feloniously, in the day time, break and forcibly open a certain coin-operated washing machine, to-wit: a Whirlpool washer, Model No. OTA2000G–4, Serial No. 002204948, containing money, by inserting a spurious, counterfeit key into the locking mechanism of the coin box of said machine, being located at 1815 North Boomer Road, City of Stillwater, Payne County, Oklahoma, *said machine being the east-*

*ern-most machine located on the north wall of the north compex of Phase III,* 40 North Apartments, at said address, and in the possession of Gilford E. Duggan, with the willful and felonious intent to steal money, in Violation of Title 21, OSA, Section 1435, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Oklahoma." (Emphasis added)

We note in the instant case, the serial number of the specific machine alleged to have been burglarized was not proved. We find, however, the instant case is distinguishable from *Bly,* supra, in that the allegation of the serial number in *Bly* constituted the only definitive description of the property burglarized. Consequently, in *Bly,* supra, to identify the burglarized property the District Attorney was required to prove the serial number. In the instant case, as above noted, the Information describes the machine burglarized by serial number and by specific location. Consequently the proof, establishing all of the elements of burglary by both circumstantial and direct evidence is not deficient in proving a prima facie case. It therefore becomes necessary to determine if all the specific factors alleged in the Information must be proved as far as the identification of the property burglarized is concerned. We think not. *Bly,* supra, is not to be construed to require an allegation of the serial number of the machine and proof of that serial number when there is other evidence which will sufficiently prove property identification. The allegation supported by legally sufficient evidence to prove said allegation that the machine burglarized was the eastern-most machine located on the north wall of the north complex, is sufficient evidence to establish a prima facie case and submit the case to jury for its consideration. It is the exclusive province of the jury to weigh the evidence and ferret the truth from conflict and this Court will not interfere with the jury's determination when it is predicated upon legally sufficient evidence. Jones v. State, Okl.Cr., 468 P.2d 805 (1970). We find under the circumstances of the instant case the evidence is sufficient to establish the identity of the object burglarized.

Defense counsel next urges the court erred in permitting the District Attorney to amend the Information on the day of trial without granting a continuance for the defense counsel to prepare his defense against said amendments. Counsel further candidly admits that this question is largely a matter within the sound discretion of the trial court. Counsel for the State in his brief submits the language of 22 O.S.1971, § 410 which provides as follows:

"No indictment or information is insufficient, nor can the trial, judgment, or other proceedings thereon be affected, by reason of a defect or imperfection in the matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

It is this Court's opinion the amendments complained of by defense counsel are amendments to the form of the Information rather than the substance. They provide additional description of the property to-wit: the serial numbers, and as a consequence, in light of the defense presented by defendants, can in no way be deemed to have altered the Information to such an extent that the defendant would be prejudiced in the manner in which he presented his defense. For this reason we find this proposition to be without merit.

Defense counsel finally urges the case should be reversed for the reason that one of the jurors who sat on the jury was the wife of a person who had previously acted as a bailiff for the trial court. After studying the transcript of trial, we observe that the voir dire proceedings were not recorded and made a part of the record. This Court will not speculate upon the extent that counsel inquired into the backgrounds of the jurors who sat on his case. This Court will not entertain a proposition of error which alleges a juror did

not volunteer sufficient background information to defense counsel when the record is completely silent regarding the extent of voir dire examination. For this reason we find this proposition to be without merit.

BRETT and BUSSEY, JJ., concurs.