**In the Matter of the DEATH OF John A. HURLBURT, Shirley A. Hurlburt, Petitioner,**

**v.**

**PATTON AND ASSOCIATES, American General Fire & Casualty, and Workers' Compensation Court, Respondents.**

No. 56494.

Court of Appeals of Oklahoma, Division No. 2.

Sept. 22, 1981.

Rehearing Denied Nov. 2, 1981.

Released for Publication by Order of Court of Appeals Dec. 4, 1981.

Frank A. Greer, Greer & Greer, Tulsa, for petitioner.

Richard F. Berger, Oklahoma City, for respondents.

BOYDSTON, Judge.

This appeal is by the common-law wife of insurance adjuster from judgment of Oklahoma State Workers' Compensation Court denying her claim for death benefits on the grounds: (1) she was not a "surviving spouse" within the meaning of 85 O.S.Supp. 1980 § 3.1(A)(2) because she was not living with or actually dependent upon the deceased at the time of his death ... nor was she "living with or actually dependent" upon the deceased ... nor living apart for

"justifiable cause," and (2) deceased, John A. Hurlburt, was on a "personal mission completely unrelated to his employment" at the time of his injury. Trial court did find petitioner "was an heir-at-law" who suffered a pecuniary loss by reason of the death, which we construe to mean petitioner was found to be deceased's common-law wife at the time of his death, but not entitled to death benefits under the provisions of the workers' compensation act.

Petitioner raises both issues on appeal. We find the issue whether deceased was acting in the scope of his employment at the time of his death is dispositive. We therefore limit the discussion to that sole issue, affirming the decision rendered below.

## I

The appellate court is limited on review to whether the record contains competent evidence to support the trial judge's decision. *Oklahoma City v. Schoonover*, Okl., 535 P.2d 688 (1975); *Cassidy v. Harding*, Okl., 451 P.2d 698 (1969); and *Ebersole v. Beck Mining Division*, Okl., 276 P.2d 201 (1954). And the decision should not be disturbed even if a contrary conclusion is permissible under the same evidence.

The undisputed facts are that deceased was a claims adjuster for Patton and Associates of Tulsa. On the night of his death, February 29, 1980, it was snowing and sleeting and the streets were icy. Brian and Teresa Kindig, his next door neighbors, testified he visited with them between 7 and 8 o'clock p. m. and asked them to watch his apartment. He told them he had just received a call and that he was going on a job to somewhere around Sapulpa and would not be back that night.

Petitioner testified she first married John Hurlburt in March, 1976, and they divorced in May, 1976. They remarried in June, 1977, and divorced again in June, 1978. In January, 1979, they resumed living together but never remarried ceremonially. She ordered him to leave in October or November because he was having an affair with a neighbor in the condominium complex where they lived. After that, they lived separately. However, they continued their joint checking accounts, he still received mail there, and she stated, "He was by every couple of days to pick up his mail and see if I needed anything. He occasionally gave me money, bought groceries, or bought gifts. We generally saw each other every couple of days."

On the night of his death, she testified he came by her apartment, brought her some cigarettes and told her he had received a call to go investigate a truck accident on the Turner Turnpike. He then left. About an hour later, she received a call from Dr. J. in Sapulpa advising her Hurlburt had been killed in an auto accident near Bristow.

Respondent insurance company introduced the testimony of Ursula Parker, who lived in Oklahoma City at the time Hurlburt died. She related he called her on that fateful night early in the evening, but after dark. She testified:

A. He said he wanted to come over, and I said—he wanted to know if I would help him with some insurance papers, and I said yes, I would, but, then it was such a horrible night, I talked him out of coming over, and he agreed to it finally. I did some tall talking. I told him it wasn't a fit night out for anyone, and I think everything was iced over that night . . . .

\*　　\*　　\*　　\*　　\*　　\*

Q. Did you have another conversation with him that night?

A. Yes. . . . somewhere between thirty and forty-five minutes or an hour, maybe, my phone rang again. . . . it was John on the phone again.

Q. [W]hat was the conversation about?

A. Very short. He said I am coming anyway, I have already made reservations, I am leaving right now and when I get to Oklahoma City I'll call you, and that was it.

Employer, Frank Patton, testified deceased was only assigned one case in February, 1980, and it was a workers' compensa-

tion case. He also stated the two truckline company clients who directly assign cases in the area would have called him first; that he was home that night, received no calls and no follow-up inquiry such as one would expect had there been an accident to which deceased might have been called. Patton admitted it was "possible" deceased may have been called out directly, though it would have been a rare case. This is substantiated by the fact that the day after the accident, Patton called the two clients who could have had an accident and called Hurlburt directly, and neither reported an accident that night.

We summarize the evidence as follows: Deceased was subject to 24 hour call to work claims assigned by employer. It is possible a client called him directly to work an accident on the turnpike. One hour before his death he told his neighbors he intended to work a job near Sapulpa; he told his common-law wife he was going to work a truck accident on the Turner Turnpike, but failed to specify the location. At about the same time, he called a lady friend, Ursula, in Oklahoma City and insisted on visiting her that night, stating: "I am leaving right now." One hour later, he died on the ice-glazed turnpike four miles beyond the Sapulpa exit. Deceased's employer had no claim reported on the turnpike for that date.

Claimant urges the decision be reversed, citing *In re Martin*, Okl., 452 P.2d 785 (1969), and correctly urging the proposition set forth in that case that:

> Any reasonable doubt as to whether an injury did in fact arise out of employment should be resolved in favor of the workman.

The *Martin* case indeed reaffirms this decisional standard previously established in *Nebo Oil Co. v. Wright*, Okl., 406 P.2d 266 (1965), *Graham-McMichaelis Drilling Co. v. Atkins*, Okl., 397 P.2d 658 (1964), and *Mullins v. Tanksleary*, Okl., 376 P.2d 590 (1962).

This line of authority extends back through *Town of Granite v. Kidwell*, Okl., 263 P.2d 184 (1953), which appears to bed-rock in *Tingey v. Industrial Accident Commission*, 22 Cal.2d 636, 140 P.2d 410 (1943). In each case the supreme court used the phrase to buttress a decision in favor of the workman, usually where there was conflicting evidence.

More important, this phrase is always prefaced with the appellate review criterion that:

> [W]hether an injury arose out of employment is one of fact to be determined by the State Industrial Court whose finding on such issue will not be disturbed on review when supported by competent evidence.

We believe the supreme court's admonition to the trial judge to "resolve all reasonable doubts" in favor of worker is merely a decisional "tie-breaker" which is especially helpful where the evidence is evenly weighted and can reasonably support either side of a factual issue. This is especially true where there is circumstantial evidence because in a workers' compensation case the trier need not exclude "every other reasonable hypothesis" as in all other applications. *See Matter of Death of May*, Okl., 586 P.2d 738 (1978); and *Farmers Co-op Exchange of Weatherford v. Krewall*, Okl., 450 P.2d 506 (1969).

The question of whether the evidence presents an evenly weighted circumstantial situation must also be left largely within the province of the trial court. This decisional power is not unbridled, but, absent a clearly arbitrary interpretation of the facts, the court's judgment should be left undisturbed when supported by competent evidence.[1]

We find, viewed from this standpoint, even though there is some evidence supporting claimant's theory that deceased was

---

1. We can find no case where the supreme court has addressed this issue squarely. However, the situation is directly analogous to the jury instructions given in every criminal trial. We observe the verdict in such cases is never dis-turbed on the sole grounds of "conflicting evidence." *Clark v. State*, Okl.Cr., 572 P.2d 250 (1977); *Gray v. State*, Okl.Cr., 561 P.2d 83 (1977); and *Neal v. State*, Okl.Cr., 529 P.2d 526 (1974).

injured while working, the trial court's decision is not such an arbitrary interpretation of those facts as to mandate a decision in favor of claimant.

Claimant's favorable evidence exists solely in the form of declarations to his wife and neighbors that he intended to "work" an accident on the turnpike. The only corroboration of this declaration is the fact that he died in an accident near Bristow. Claimant offered no evidence, either direct or circumstantial, that he actually worked that night or was on his way to do so. There was no evidence he was carrying any work materials such as claim files, tape recorders, insurance papers, or even whether he was driving a company car. In short, had the trial court found he was, in fact, injured during the course of employment it would have been on slim grounds indeed. We also note it is worker's burden to prove his case.

On the other hand, respondent offered direct evidence that there were no new company claims on the turnpike that night, that deceased had no active claims in the Sapulpa area, that it would be "possible" but highly unusual for deceased to be called out directly even if there was a new claim, and that deceased was headed to Oklahoma City for personal reasons.

The latter evidence from Ms. Parker is unequivocal, she having no partisan reason to embellish or dissemble. She quite sensibly argued strenuously against his trip that night because of the dangerous weather. She even momentarily talked him out of the trip. Logically, if he actually had a valid reason to travel part way to Oklahoma City because of a sudden call to work a claim, it is inconceivable that he would not have informed Ms. Parker of the change in circumstances on the last call. Instead, he simply stated: "I'm coming anyway."

His declarations, considering the recipients, could reasonably be interpreted as having been made for reasons other than the truth. First, his neighbors had no reason to know the true purpose of his absence, but they did need to know he would be gone so they could watch his apartment. His statements to the neighbors may have been true, but they might have also just as reasonably been "white lies" made to conceal his foolishness for going out on such a night. Likewise, it takes no imagination at all to discern why he would attempt to deceive his wife.

Contrast this case with the facts in *Nebo Oil Co. v. Wright, supra,* where the court ruled in worker's favor. The worker, a pumper, was killed when struck by 2 × 4's protruding from a truck while walking along a road at the usual time, on the exact route which he habitually took to service an oil well which he was specifically hired to service. There were other possible reasonable interpretations of the facts to explain his being on the route at the time, but there were even stronger inferences to be drawn from his habitual activities. These included the direct evidence that he had just returned from a funeral and changed from dress to work clothes before he left home and began walking toward the well at the usual time and along the usual route.

Compare that case with *Martin, supra,* where the insurance adjuster had just settled a claim, had other claim files in his company car, and was killed in an auto accident on a direct route which led from the service station where he had just settled one case to either his home, the office or even to some other potential claims activity.

In like manner, compare *Town of Kidwell v. Kidd, supra,* wherein a town marshal was shot by a deputy sheriff during a dispute over whether criminal charges should be filed in a case.

When all the facts are considered, we believe the traditional "preponderance of evidence" jury instruction, i.e., "what do you believe, based on this evidence, is more probably true than not?" fairly well validates the court's decision. If the facts can not survive the "preponderance of evidence" test, it makes little sense to argue whether they raise a "reasonable doubt."

Based on this record, we conclude the trial court's decision is supported by competent evidence. We affirm and tax costs of appeal against petitioner.

BACON, P. J., concurs.

BRIGHTMIRE, J., dissents.

BRIGHTMIRE, Judge, dissenting.

I do not share the majority's view that the *In re Martin*[2] precept was manifestly applied by the trial court in this case as a "tie breaker." Nor could it have been. There was, in my opinion, no tie.

Whatever else might be said about the comparison of the facts in this case with those of *Martin*, it must be conceded that the trial court in *Martin* relied solely upon conflicting circumstances in resolving the factual doubts in favor of the claimant's widow. The high court admiringly patted the trial judge on the back, paying inferential homage to a hallmark of basic justice— that if the court cannot always be right it should avoid being wrong to the detriment of the worker when it comes to determining his entitlement in factually unclear death claims.

In the case at bar, the trial judge had more than the less than cogent circumstantial evidence available in *Martin*. He had direct evidence, or at least evidence approaching such status. The undisputed evidence is that Hurlburt at one point told his acquaintance in Oklahoma City he would not be coming there that night. Then about an hour later, he told his neighbors and his wife he had to go investigate an accident on the Turner Turnpike. Evidently because of the new development, he placed a second call to his friend in Oklahoma City and told her that he would be in Oklahoma City later in the evening after all. His death occurred about an hour later four miles west of Sapulpa—a location that was in the vicinity of where he said he would be working.

The two calls to Oklahoma City in themselves strongly suggest something occurred between the first and second call. It probably was a request for Hurlburt to investigate an accident near Sapulpa. This inference, along with the undisputed facts, places Hurlburt, who was on 24-hour-call

for his company, directly in the course of his employment when he died.

To overcome this, the employer introduced certain evidence which tended to raise some doubt about whether deceased was on his way to or from an accident when he was killed. The majority takes this evidence, stirs in some speculations about evidence neither party sought to adduce, and comes up with an evidentiary mix they say preponderates in favor of the fact that Hurlburt was on a frolic of his own when he lost his life. However, this assumes the preponderance test controls the instant case rather than the reasonable doubt test—an assumption that forms the foundation for my disagreement with the result reached by the majority. For indeed, the facts might well be able to survive the preponderance test and yet still give rise to a reasonable doubt resolvable in favor of the claimant.

In my opinion the evidentiary sufficiency tests used in either criminal or civil cases are not applicable in a workers' compensation death claim contest as suggested by the majority. The test to be employed in the latter case is a just and humane one lucidly promulgated in *Martin*, namely, that where "there is reasonable doubt as to whether an accident did in fact arise out of the employment such doubt *shall* be resolved in favor of the claimant."[3]

I am satisfied this test was not applied by the trial judge in this case. And because I believe a reasonable doubt exists about whether Hurlburt's death was work related, I think a different result would have been reached by the trial judge had it been applied. I would therefore vacate the order appealed and remand the case with instructions to apply the doubt test in evaluating the evidence.

---

**2.** 452 P.2d 785 (Okl.1969).

**3.** *Id.* emphasis added.